IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LYLE J. GUIDRY, on behalf of the MRMC ESOP, and on behalf of a class of all other persons similarly situated,<br><br>    **Plaintiff,**<br><br>v.<br><br>**WILMINGTON TRUST, N.A.,** as successor to Wilmington Trust Retirement and Institutional Services Company,<br><br>    **Defendant.** | Case No. |

## COMPLAINT

Plaintiff Lyle J. Guidry, by his undersigned attorneys, on behalf of the MRMC ESOP and similarly situated participants in that employee pension benefit plan, alleges upon personal knowledge, the investigation of his counsel, and upon information and belief as to all other matters, as to which allegations he believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1. Plaintiff Lyle J. Guidry ("Plaintiff") brings this suit against Wilmington Trust, N.A. ("Wilmington Trust") as successor to Wilmington Trust Retirement and Institutional Services Company, the trustee for the MRMC ESOP (the "Plan") when the Plan acquired shares of Martin Resource Management Corporation ("MRMC") in a two-stage transaction in 2012 and 2013.

2. Plaintiff is a participant in the Plan and is vested in shares of MRMC allocated to his account in the Plan.

1

3. This action is brought under Sections 406, 409, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1106, 1109, and 1132(a), for losses suffered by the Plan, and other relief, caused by Wilmington Trust when it authorized the Plan to buy shares of MRMC for more than fair market value.

4. As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Wilmington Trust's violations of ERISA's prohibited transaction rules.

5. MRMC is and was at all relevant times a privately-held company and a party in interest to the Plan. In 2012, in the first stage of the transaction, the Plan purchased from party in interest sellers 738 shares of MRMC common stock and 3,066.5 shares of MRMC preferred stock which, following a stock split in December 2012 and a conversion of the preferred stock to common stock in 2013, became 95,112.5 shares of common stock. In the second stage of the transaction, in 2013, the Plan purchased approximately 89,049.5 shares of MRMC common stock from party in interest sellers. Some of these first and second stage purchases were made with the proceeds of loans from parties in interest. Upon completion of the second stage of this two stage 2012–2013 transaction (both stages together, the "ESOP Transaction" or "Transaction"), the Plan attained majority ownership of MRMC. At that time in 2013, MRMC became 100% employee owned.

6. Wilmington Trust represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority over whether to go through with the ESOP Transaction.

7. The ESOP Transaction allowed sellers to unload their interests in MRMC at an inflated price or prices, and saddle Plan participants with millions of dollars of debt payable to

parties in interest to finance the Transaction. Wilmington Trust failed to fulfill its duties to the Plan and Plan participants, including Plaintiff.

8. Plaintiff brings this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by him and similarly situated participants, resulting from Wilmington Trust's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA.

## JURISDICTION AND VENUE

9. This action arises under Title I of ERISA, 29 U.S.C. §§ 1001–1191c, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to enjoin acts and practices that violate the provisions of Title I of ERISA, to require Wilmington Trust to make good to the Plan losses resulting from its violations of ERISA, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

10. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

11. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant Wilmington Trust resides or may be found in this District, and because some of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

12. At all relevant times, Plaintiff Lyle J. Guidry has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Plaintiff Guidry resides in Nederland, Texas. He is vested in shares of MRMC in his Plan account. He was employed by MRMC as a truck driver.

13. Defendant Wilmington Trust is a trust company chartered in Delaware. Its main office is at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington Trust is a wholly-owned subsidiary of Wilmington Trust Corporation, which is also headquartered at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington Trust Corporation is a wholly-owned division of M&T Bank Corporation. M&T Bank Corporation is headquartered in Buffalo, New York.

14. Defendant Wilmington Trust was the Trustee of the Plan for the ESOP Transaction. Wilmington Trust at all relevant times was a "fiduciary" under ERISA because it was the Trustee. As Trustee, Wilmington Trust had exclusive authority to manage and control the assets of the Plan and had sole and exclusive discretion to authorize the ESOP Transaction.

15. Wilmington Trust was a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), at all relevant times.

## FACTUAL ALLEGATIONS

16. MRMC is a privately held entity that has more than 2,600 employees. MRMC bills itself, through its various subsidiaries, as "an independent provider of marketing and distribution of fuel oil, asphalt, sulfuric acid, diesel fuel and high-quality naphthenic lubricants. . . . MRMC's surface transportation capabilities include operating over 800 trucks and 1200 trailers across the United States through its network of 25 truck terminals."

17. MRMC is headquartered at 4200 B Stone Rd., Kilgore, Texas 75662.

18. MRMC is an S corporation. MRMC stock is not readily tradable on an established securities market.

19. MRMC adopted the Plan with an effective date of January 1, 2012.

20. The Plan is a retirement plan governed by ERISA.

4

21. The Plan is an individual account plan under which a separate individual account is established for each participant.

22. The Plan's principal asset has been MRMC stock at all times since its inception.

23. MRMC identifies the Plan as intended to be a leveraged employee stock ownership plan, or "Leveraged ESOP."

24. MRMC is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

25. Employees of MRMC and its subsidiaries participate in the Plan.

26. The Plan is administered at MRMC's Corporate Headquarters in Kilgore, Texas.

27. MRMC is the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

28. MRMC is an ERISA fiduciary to the Plan.

29. All the Plan's Forms 5500, Annual Return/Report of Employee Benefit Plan, from 2012 to 2015 identify MRMC as the sponsor and administrator of the Plan.

30. The Schedule of Assets to all the Plan's Forms 5500 from 2012 to 2015 identify MRMC as a party in interest.

31. MRMC appointed Wilmington Trust as Trustee of the ESOP in 2012 to represent the Plan in the proposed ESOP Transaction. Wilmington Trust continued in that role in 2013 in the second stage of the ESOP Transaction. As Trustee, Wilmington had sole and exclusive authority to approve both stages of the ESOP Transaction on behalf of the Plan, including the price the Plan paid for MRMC stock.

32. As Trustee for the Plan, it was Wilmington Trust's exclusive duty to ensure that any transactions between the Plan and the sellers, including acquisitions of MRMC stock by the

Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

33. In the first stage of the ESOP Transaction in 2012, Wilmington Trust, in its capacity as Trustee of the Plan, caused the Plan to purchase 738 shares of MRMC common stock using proceeds from a cash contribution by MRMC. Wilmington Trust also caused the Plan to purchase 3,066.5 shares of MRMC preferred stock using the proceeds of a borrowing from MRMC. That loan carried a 2.36% interest rate per annum, with a maturity date of December 31, 2027. At year-end 2012, the Plan owed MRMC $198,679,452 on that loan. As a result of this first stage transaction, the Plan owned a minority interest in MRMC.

34. In December 2012, MRMC executed a stock split whereby each issued and outstanding share was split and converted into 25 shares, converting the Plan's common shares from 738 to 18,450 and preferred shares from 3,066.50 to 76,662.5.

35. In 2013, the Plan's 76,662.5 shares of preferred stock were converted into 76,662.5 shares of common stock.

36. In the second stage of the ESOP Transaction in 2013, Wilmington Trust, in its capacity as Trustee of the Plan, caused the Plan to purchase approximately 32,194 shares of MRMC common stock using cash, dividends and the proceeds of a borrowing from MRMC. That loan carried a 3.49% interest rate per annum, with a maturity date of December 31, 2033. At year-end 2013, the Plan owed MRMC $19,057,792 on that loan.

37. Also in the second stage of the ESOP Transaction in 2013, Wilmington Trust, in its capacity as Trustee of the Plan, caused the Plan to purchase 56,855.5 shares of MRMC common stock using cash and proceeds from subordinated notes. These shares were purchased from two

entities related to party in interest Ruben S. Martin III and/or other parties in interest: CNRT LLC and The Ruben S. Martin III Dynasty Trust, which are also parties in interest.

38. Ruben S. Martin III is the registered agent for CNRT LLC. The mailing address for CNRT LLC is the address of MRMC's headquarters in Kilgore, Texas.

39. At year-end 2013, the Plan owed $83,666,672 on the Class C Promissory Note to CNRT, LLC, and it owed $302,192 on the Class C Promissory Note to The Ruben S. Martin III Dynasty Trust. The CNRT loan and Dynasty Trust loan both carried a 5% interest rate per annum. On the CNRT loan the principal was due on the maturity date of December 31, 2022. On the Dynasty Trust loan the principal was due on the maturity date of December 23, 2022.

40. The "Notes to the Financial Statements" attached to the Plan's Forms 5500 state that: "The Plan invests in Company common stock and has indebtedness with the Company. These are related party and party-in-interest transactions. The Plan's service providers are parties-in-interest under ERISA."

41. Following the second stage of the ESOP Transaction in 2013, the Plan owned approximately 81.4% of the outstanding common stock of MRMC. The MRMC ESOP Trust therefore was the majority shareholder of MRMC.

42. An older, smaller plan called the "Martin ESOP" holds additional shares of MRMC common stock. Since January 1, 2013, MRMC employees have not been eligible to become new participants in the Martin ESOP. The Martin ESOP's ownership share of MRMC has decreased since 2013 as participants cash-out of the Martin ESOP.

43. By the first quarter of 2017, the Plan's ownership of MRMC increased to 85.90% of the outstanding common stock of MRMC.

44. MRMC has been 100% employee owned (taking the Plan and the Martin ESOP together) since the completion of the ESOP Transaction in 2013.

45. CSG Partners, LLC ("CSG"), a New York-based boutique investment bank, advised MRMC in the ESOP Transaction in 2012 and 2013.

46. CSG marketing materials say it can structure ESOP transactions such that selling shareholders will continue to control the company, exercising control through the board of directors and other corporate governance tools, even where the ESOP purchases 100% of the company.

47. MRMC was founded in 1951 by R.S. Martin, Jr., and his wife, Margaret Martin.

48. Ruben S. Martin III and Scott D. Martin are the sons of the founders. Following their father's management of the company, they jointly managed MRMC, and owned or controlled all the voting shares of MRMC.

49. Scott D. Martin was Executive Vice President of MRMC and a member of the Board of Directors.

50. At the time of the ESOP Transaction, Ruben S. Martin III was President, Chief Executive Officer, and Chairman of the Board of MRMC.

51. After the ESOP Transaction, Ruben S. Martin III was and continues to be President, Chief Executive Officer, and Chairman of the Board of MRMC.

52. The Directors chosen by previous MRMC owners before the Plan became in 2013 the majority owner of MRMC—Ruben S. Martin III, Robert D. Bondurant, and Randall L. Tauscher—have remained to present in 2017 as Directors of MRMC.

53. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery. The Plan paid a control premium for MRMC even though the Plan did not obtain control over the MRMC Board of Directors upon its 2013 majority ownership of the company. Further, the Plan did not receive a discount for lack of control. The Plan therefore overpaid for MRMC.

54. As Trustee, Wilmington Trust is subject to liability for a payment by the Plan of more than fair market value for MRMC stock caused by the Plan's payment of a control premium where a previous owner or owners retained control of MRMC, the Plan's failure to receive a discount for lack of control, and/or other factors in Wilmington Trust's faulty valuation of MRMC in the ESOP Transaction.

55. The cost value of the 184,161.5 shares of MRMC common stock purchased by the Plan in the 2012 to 2013 ESOP Transaction (taking into account the conversion of preferred stock to common stock and the stock split) was $375,478,000.

56. As of December 31, 2013, the MRMC shares purchased by the Plan in the ESOP Transaction were re-valued at $189,852,213.

57. That is, an independent appraiser for purposes of a 2013 year-end report determined the fair market value of the Plan's MRMC stock to be $185,626,187 lower at the end of the same year in which the ESOP Transaction concluded.

58. This reduction in value amounted to a change of more than 49%.

59. At year-end 2013, the Plan still had an acquisition indebtedness of $204,398,074 for purchase of the MRMC stock, owed to parties in interest.

60. In subsequent years, the independent appraiser continued to consistently adjust the fair market value of the Plan's MRMC stock downwards.

61. As of December 31, 2014, the 183,816.66 shares of MRMC common stock then held by the Plan were valued at $159,369,433, down from a cost value of $374,926,960.

62. As of December 31, 2015, the 182,621.21 shares of MRMC common stock then held by the Plan were valued at $151,210,743, down from a cost value of $372,488,265.

63. An appraiser therefore reappraised the fair market value of the Plan's MRMC stock from the more than $2,038 per share paid in the ESOP Transaction, downwards to more than $1,030 per share at year-end 2013, then down to approximately $867 per share at year-end 2014, and again down to approximately $828 per share at year-end 2015.

64. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan overpaid for MRMC due to Wilmington Trust's use of unrealistic growth projections, reliance on unreliable or out-of-date financials, improper discount rates, failure to test assumptions, failure to explain or consider underlying assumptions, inconsistent assumptions, inappropriate comparables, and/or other factors that rendered its valuation of MRMC stock in the ESOP Transaction faulty.

65. Incentives to Wilmington Trust to act in favor of the sellers in the ESOP Transaction included the possibility of: continued referrals of business by CSG; business from sellers of companies who understood that Wilmington Trust believed a lesser degree of due diligence was needed for ESOP purchases of businesses than for non-ESOP-buyers' purchases of businesses, which Wilmington Trust distinguished as "real world" transactions; and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

66. Wilmington Trust is liable to the Plan for the difference between the price paid by the Plan and the actual value of MRMC shares at the time of the ESOP Transaction.

## CLAIMS FOR RELIEF

### COUNT I

**Causing and Engaging in Prohibited Transactions Forbidden by
ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b)**

67.　Plaintiff incorporates the preceding paragraphs as though set forth herein.

68.　ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Wilmington Trust, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here MRMC stock, with a party in interest, here the sellers in the ESOP Transaction, including but not limited to, on information and belief, Ruben S. Martin III; Scott D. Martin; CNRT, LLC; The Ruben S. Martin III Dynasty Trust; and/or MRMC.

69.　ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits Wilmington Trust from causing the Plan to borrow money from parties in interest MRMC; CNRT, LLC; and The Ruben S. Martin III Dynasty Trust.

70.　ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E), prohibits Wilmington Trust from causing the Plan to acquire MRMC securities.

71.　The stock and loan transactions between the Plan and the parties in interest were authorized by Wilmington Trust in its capacity as Trustee for the Plan.

72.　Wilmington Trust caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

73.　ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

11

74. Wilmington Trust acted on behalf of the sellers in connection with the Plan's stock and loan transactions in 2012–2013 by causing the Plan to acquire MRMC stock and loans. This greatly benefited the sellers to the substantial detriment of the Plan, even though Wilmington Trust was required to serve the interests of the Plan in connection with any such transaction.

75. Wilmington Trust received compensation from MRMC as Trustee for the Plan in violation of ERISA § 406(b)(3).

76. Wilmington Trust caused and engaged in prohibited transactions in violation of ERISA § 406(b) in the ESOP Transaction.

77. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

78. ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

79. Wilmington Trust has caused millions of dollars of losses to the Plan by the prohibited transactions in an amount to be proven more specifically at trial.

## CLASS ACTION ALLEGATIONS

80. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the MRMC ESOP. Excluded from the Class are the shareholders and entities controlled by them who sold their Martin Resource Management Corporation (MRMC) stock to the Plan and their immediate families; the directors of MRMC; and legal

representatives, successors, and assigns of any such excluded persons.

81. The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's Form 5500 filing for 2015 indicates that as of December 31, 2015, there were 2,470 participants and deceased participants whose beneficiaries are receiving or entitled to receive benefits in the Plan.

82. Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

    i. Whether Wilmington Trust served as Trustee in the Plan's acquisition of MRMC stock;

    ii. Whether Wilmington Trust was an ERISA fiduciary of the Plan;

    iii. Whether Wilmington Trust caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase MRMC stock and take loans from parties in interest;

    iv. Whether Wilmington Trust engaged in good faith valuations of the MRMC stock in connection with the ESOP Transaction;

    v. Whether Wilmington Trust caused the Plan to pay more than fair market value for MRMC stock;

    vi. Whether Wilmington Trust engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

    vii. Whether Wilmington Trust engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

    viii. Whether the sellers of MRMC stock to the Plan were parties in interest; and

    ix. The amount of losses suffered by the Plan and its participants as a result of Wilmington Trust's ERISA violations.

83. Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of his Plan account because the Plan paid an inflated price or prices and took on excessive loans for MRMC stock, and he continues to suffer such losses in the present because Wilmington Trust failed to correct the overpayment by the Plan in its time as Trustee.

84. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

85. Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Wilmington Trust, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

86. In the alternative, class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Wilmington Trust has acted or refused to act on grounds generally applicable to the Class, making appropriate

declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Wilmington Trust's violations of ERISA.

87.     The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant and for the following relief:

A.  Declare that Defendant Wilmington Trust caused the Plan to engage in prohibited transactions and thereby breached its duties under ERISA;

B.  Enjoin Defendant Wilmington Trust from further violations of ERISA and its responsibilities, obligations, and duties;

C.  Order that Defendant Wilmington Trust make good to the Plan and/or to any successor trust(s) the losses resulting from its breaches of ERISA and restore any profits it has made through use of assets of the Plan;

D.  Order that Defendant Wilmington Trust provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant Wilmington Trust;

E.  Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

F.  Order Wilmington Trust to disgorge any fees it received in conjunction with its services as Trustee for the Plan as well as any earnings and profits thereon;

G. Order Wilmington Trust to pay prejudgment interest;

H. Enter an order certifying this lawsuit as a class action; and

I. Award such other and further relief as the Court deems equitable and just.

Dated: March 10, 2017

Respectfully submitted,

BAILEY & GLASSER LLP

By: /s/ David A. Felice
David A. Felice (#4040)
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, DE  19808
Telephone: (302) 504-6333
Facsimile: (302) 504-6334
dfelice@baileyglasser.com

Gregory Y. Porter (*pro hac vice* to be filed)
Ryan T. Jenny  (*pro hac vice* to be filed)
1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

*Attorneys for Plaintiff*