# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LYLE J. GUIDRY and RODNEY
CHOATE, on behalf of the MRMC ESOP
and a class of all other persons similarly
situated,

               Plaintiffs,

               v.

WILMINGTON TRUST, N.A., as
successor to Wilmington Trust Retirement
and Institutional Services Company,

               Defendant.

Cons. Case No. 17-250-RGA

## AMENDED CLASS ACTION COMPLAINT

### I.     INTRODUCTION

1.     Plaintiffs Lyle J. Guidry and Rodney Choate bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on behalf of a class of participants (and their beneficiaries) in the MRMC ESOP (the "Plan" or "New ESOP") and on behalf of the Plan to require Defendant Wilmington Trust, N.A., the fiduciary trustee entrusted with their Plan, to make good to the Plan, Plaintiffs, and Class Members losses resulting from fiduciary violations, to restore to the Plan any profits that have been made by Defendant, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.  Plaintiffs and the Class they seek to represent have been cheated out of their hard-earned retirement benefits as a result of violations of ERISA's general fiduciary and prohibited transaction rules by Defendant in acquiring the shares of Martin Resource Management Corporation ("MRMC") in a two-stage transaction in 2012 and 2013.

2.     The Plan is an employee benefit plan as defined by ERISA § 3(3), 29 U.S.C.

§ 1002(3), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1). The

Plan is designed to be an "employee stock ownership plan" within the meaning of ERISA

§ 407(d)(6), 29 U.S.C. § 1107(d)(6). The Plan is sponsored by MRMC.

3.      MRMC is and was at all relevant times a privately-held company. In 2012, in the

first stage of the transaction, the Plan purchased from party in interest sellers 738 shares of

MRMC common stock and 3,066.5 shares of MRMC preferred stock which, following a stock

split in December 2012 and a conversion of the preferred stock to common stock in 2013,

became 95,112.5 shares of common stock. In the second stage of the transaction, in 2013, the

Plan purchased approximately 89,049.5 shares of MRMC common stock from party in interest

sellers. Some of these first and second stage purchases were made with the proceeds of loans

from parties in interest. Upon completion of the second stage of this transaction (both stages

together, the "ESOP Transaction" or "Transaction"), the Plan attained majority ownership of

MRMC. At that time, in 2013, MRMC became 100% employee owned.

4.      Wilmington Trust represented the Plan and its participants as Trustee in the ESOP

Transaction. It had sole and exclusive authority to act on behalf of the Plan in the Transaction.

5.      The ESOP Transaction allowed party in interest sellers to unload their interests in

MRMC at an inflated price or prices, and saddle Plan participants with millions of dollars of debt

payable to parties in interest to finance the Transaction. Wilmington Trust failed to fulfill its

duties to the Plan and Plan participants, including Plaintiffs.

6.      The challenged Transaction in this case is similar to the ESOP transaction that

gave rise to the ERISA claims in *Brundle v. Wilmington Trust N.A.*, No. 1:15CV1494

(LMB/IDD), 2017 WL 979106 (E.D. Va. Mar. 13, 2017).  This action has the same defendant;

same kind of transaction; same investment bank; same valuation firm; and same bad outcome for

the Plan's participants.  Indeed, the *Brundle* court even noted that "Wilmington [Trust], CSG

[the investment bank], and SRR [the valuation firm] were actually working on another ESOP

transaction, for Martin Resources, at the same time they were negotiating the Constellis deal [the

ESOP transaction at issue in *Brundle*]."  *Id*. at *25.  In *Brundle*, the court found that Wilmington

2

Trust had a "tendency to rubber stamp whatever [the ESOP sponsor] and [valuation firm] put in front of it, thereby violating its fiduciary duty to exercise prudence." *Id*. at *24.  Following trial, the *Brundle* court ruled that Wilmington Trust engaged in a prohibited transaction by failing to ensure that the ESOP paid no more than adequate consideration for company stock and, as a result, damaged the ESOP by agreeing to overpay by over $29 million for the stock.  *Id*. at *31.

7.      Plaintiffs bring this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by Plaintiffs and similarly situated participants, resulting from Wilmington Trust's engaging in, and causing the Plan to engage in, prohibited transactions and fiduciary violations under ERISA.

## II.      JURISDICTION

8.      This action arises under Title I of ERISA, 29 U.S.C. § 1001 *et seq*., and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to enjoin acts and practices that violate the provisions of Title I of ERISA, to require Wilmington Trust to make good to the Plan losses resulting from its violations of ERISA, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

9.      This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 29 U.S.C. § 1331.

## III.      VENUE

10.      Venue lies in the District of Delaware pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant resides or may be found in this District, and/or breaches took place in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides within this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

## IV.      PARTIES

11.      Plaintiff Lyle J. Guidry is a former employee of MRMC.  At all relevant times,

Plaintiff Guidry has been a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan, holding MRMC stock in his Plan individual account.  He was employed by MRMC as a truck driver.

12.     Plaintiff Rodney Choate is a former employee of MRMC.  At all relevant times, Plaintiff Choate has been a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan, holding MRMC stock in his Plan individual account.  He was employed by MRMC as a Vessel Captain, Inland Group.

13.     Defendant Wilmington Trust is a trust company chartered in Delaware. Its main office is at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington Trust is a wholly-owned subsidiary of Wilmington Trust Corporation, which is also headquartered at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington Trust Corporation is a wholly-owned division of M&T Bank Corporation. M&T Bank Corporation is headquartered in Buffalo, New York.

14.     At all relevant times, Defendant Wilmington Trust, N.A., or its predecessor, Wilmington Trust Retirement and Institutional Services Company (together, "Wilmington Trust"), has been a Trustee of the Plan within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a). Defendant Wilmington Trust at all relevant times has been a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the Plan and/or exercised authority or control respecting management or distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.  Defendant Wilmington Trust at all relevant times has also been a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14).

## V.     FACTS

15.     MRMC is a privately-held company whose initial predecessor was incorporated in 1951 as a supplier of products and services to drilling rig contractors. Since then, MRMC has expanded its operations through acquisitions and internal expansion to provide services to the

producers and purchasers of petroleum products and by-products and other bulk liquids.

16.     MRMC is an S-Corporation. MRMC stock is not readily tradable on an established securities market.

17.     As of December 31, 2012 and December 31, 2013, MRMC owned 19.2% and 19.1%, respectively, of the total outstanding limited partner units of Martin Midstream Partners, L.P. ("Martin Midstream"), a publicly traded limited partnership.  Furthermore, MRMC owns and controls the general partner of Martin Midstream, and directs Martin Midstream's business operation through its ownership and control of the general partner. MRMC is an important supplier and customer of Martin Midstream, and vice versa. Under the terms of an omnibus agreement dated November 1, 2002 between MRMC and Martin Midstream, the employees of MRMC are responsible for conducting the business of Martin Midstream and operating Martin Midstream's assets.

18.     Ruben S. Martin III has been President and Chairman of the Board of Directors of MRMC since 1981 and has served in various capacities with the company since 1974.  Ruben S. Martin III has also served as President, CEO and Director of Martin Midstream since June 2002. For many years, MRMC was jointly managed by Ruben S. Martin III and his brother, Scott D. Martin. Beginning in or about 2006, the brothers' relationship began to deteriorate regarding the management of MRMC and an internecine power struggle over the control of MRMC arose between them.  As part of the intrafamily dispute, MRMC and various Martin family members filed lawsuits against Ruben S. Martin III or Scott D. Martin.  In all, there were nearly a dozen lawsuits filed by MRMC, family members aligned with Ruben S. Martin III, or family members aligned with Scott D. Martin.

19.     Effective October 1, 1984, MRMC adopted the Martin Employee Stock Ownership Plan ("Old ESOP").  The Old ESOP invested primarily in MRMC stock.  Plaintiffs participated in the Old ESOP.

20.      MRMC adopted the New ESOP effective January 1, 2012. The New ESOP also invested primarily in MRMC stock.  Beginning in 2012, MRMC ceased all contributions to the

Old ESOP, renamed the Old ESOP the "Martin Employees' Stock Profit Sharing Plan," and began making contributions to the New ESOP.

21.     The Plan is an individual account plan under which a separate individual account is established for each participant. Employees of MRMC and its subsidiaries participate in the Plan. MRMC is the Plan's sponsor, administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14).

22.     In or about October 2012, Ruben S. Martin III, Scott D. Martin, and MRMC agreed to the settlement of the longstanding litigation among them.  As part of the settlement, MRMC purchased all MRMC shares owned by Scott D. Martin and certain other parties involved in the litigation. Upon information and belief, MRMC sold these shares to the Plan in the first stage of the ESOP Transaction.

23.     As a result of the settlement of the Martin lawsuits, MRMC established the New ESOP and used the New ESOP to directly or indirectly purchase additional MRMC stock from entities related to the Martin family in the ESOP Transaction.

24.     MRMC appointed Wilmington Trust as Trustee of the Plan in 2012 to represent the Plan in the proposed ESOP Transaction. Wilmington Trust continued in that role in 2013 in the second stage of the ESOP Transaction.

25.     As Trustee, Wilmington had sole and exclusive authority to approve both stages of the ESOP Transaction on behalf of the Plan, including the price the Plan paid for MRMC stock. Wilmington Trust was required to ensure that any transactions between the Plan and the selling shareholders, including acquisitions of MRMC stock by the Plan and loans to the Plan, were fair and reasonable, and to make sure that the Plan paid no more than fair market value for MRMC stock.

26.     In 2012, Wilmington Trust, in its capacity as Trustee of the Plan, caused the Plan to purchase approximately 738 shares of MRMC common stock using proceeds from a cash contribution by MRMC from a party in interest, and approximately 3,066.5 shares of MRMC preferred stock from a party in interest using the proceeds of a loan from MRMC.  That loan

carried a 2.36% interest rate per annum, with a maturity date of December 31, 2027. At year-end 2012, the Plan owed MRMC $198,679,452 on that loan. As a result of this first stage transaction, the Plan owned a minority interest in MRMC.

27.     In December 2012, as the result of an MRMC stock split whereby each issued and outstanding share was converted into 25 shares, the Plan's 738 common shares became 18,450 common shares, and the Plan's 3,066.5 preferred shares became 76,662.5 preferred shares.

28.      In 2013, the Plan's 76,662.5 shares of preferred stock were converted into 76,662.5 shares of common stock.

29.     In 2013, Wilmington Trust, in its capacity as Trustee of the Plan, caused the Plan to purchase approximately 32,194 shares of MRMC common stock from a party in interest using cash, dividends and the proceeds from a loan from the Company.  The Plan then purchased an additional 56,855 shares of MRMC common stock from parties in interest using cash and the proceeds from subordinated notes.  Upon information and belief, the selling shareholders in the 2013 transactions included The Ruben S. Martin III Dynasty Trust and CNRT LLC.

30.     Ruben S. Martin III is the registered agent for CNRT LLC.  The registered address for CNRT LLC is the address for MRMC's corporate headquarters in Kilgore, Texas.

31.     Upon completion of the first and second stages of the ESOP Transaction, the Old ESOP and the New ESOP owned 100% of MRMC. As of the end of 2013, the New ESOP owned approximately 81.4% of the outstanding common stock of MRMC.

32.     At year-end 2013, the Plan owed $83,666,672 on the Class C Promissory Note to CNRT, LLC, and it owed $302,192 on the Class C Promissory Note to The Ruben S. Martin III Dynasty Trust. The CNRT loan and Dynasty Trust loan both carried a 5% interest rate per annum. On the CNRT loan, the principal was due on the maturity date of December 31, 2022. On the Dynasty Trust loan, the principal was due on the maturity date of December 23, 2022.

33.     The "Notes to the Financial Statements" attached to the Plan's Forms 5500 state that: "The Plan invests in Company common stock and has indebtedness with the Company. These are related party and party-in-interest transactions. The Plan's service providers are

7

parties-in-interest under ERISA."

34.     Ruben S. Martin III remained President and Chairman of the Board of Directors of MRMC following the ESOP Transaction.  In addition, Robert D. Bondurant served as Executive Vice President, Chief Financial Officer and Director, and Randall L. Tauscher served as Executive Vice President, Chief Operating Officer and Director, both before and after the ESOP Transaction.

35.     CSG Partners, LLC ("CSG Partners"), a New York investment bank, advised MRMC in the ESOP Transaction.

36.     CSG marketing materials say it can structure ESOP transactions such that selling shareholders will continue to control the company, exercising control through the board of directors and other corporate governance tools, even where the ESOP purchases 100% of the company.

37.     Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. CSG Partners recommended to MRMC that MRMC retain Defendant Wilmington Trust to represent the Plan as Trustee in the ESOP Transaction. The appraisals relied upon by Defendant Wilmington Trust in the ESOP Transaction included a control premium even though Ruben S. Martin III retained control of MRMC following the ESOP Transaction. Further, the Plan did not receive a discount for lack of control in the ESOP Transaction.

38.     Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The appraisals relied upon by Defendant Wilmington Trust in the ESOP Transaction did not adequately account for:

    a)   the debt burden taken on by MRMC in the Transaction;

    b)    MRMC and Martin Midstream's high degree of leverage;

    c)   the cyclical nature of the petroleum industry and its impact on MRMC;

    d)   the costs imposed on MRMC by the settlement with Scott D. Martin and other

family members; and/or

    e)  the disruptions in the business operations and management of MRMC and Martin Midstream caused by the control struggle between Ruben S. Martin III and Scott D. Martin, and the settlement of their dispute.

39.    Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Defendant did not perform due diligence similar to the due diligence that is performed by third-party buyers in large corporate transactions in the course of the ESOP Transaction. Wilmington Trust believed a lesser degree of due diligence was needed for ESOP purchases of businesses than for non-ESOP-buyers' purchases of businesses, which Wilmington Trust distinguished as "real world" transactions.

40.    Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan overpaid for MRMC stock in the ESOP Transaction due to Defendant Wilmington Trust's reliance on unrealistic growth projections, unreliable or out-of-date financial statements, inappropriate comparable public companies, and improper discount rates; Wilmington Trust's failure to test assumptions, and failure to question or challenge underlying assumptions; and/or other factors that rendered its valuation of MRMC stock in the ESOP Transaction faulty.

41.    Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Defendant Wilmington Trust had divided loyalties in the ESOP Transaction because Wilmington Trust hoped to receive additional referrals from CSG Partners. In addition, Defendant Wilmington Trust hoped that MRMC would retain it to serve as the Plan's ongoing Trustee after the ESOP Transaction and thereby receive annual fees for trustee services.

42.    The Plan paid $375,478,400 for the MRMC stock purchased from parties in interest in the ESOP Transaction.  As of December 31, 2013, however, the Plan reported that its

MRMC stock was only worth $189,852.213. Thus, the Plan reported that its stock had lost approximately half its value a short time after the Plan completed its transactions with parties in interest.

43.     The Plan's MRMC stock has continued to decline in value.  As of December 31, 2015, the Plan reported that its MRMC stock was only worth $151,210,743.

## VI.    CLASS ACTION ALLEGATIONS

44.     Plaintiffs bring their Claims for Relief for violations of ERISA § 502(a), 29 U.S.C. § 1132(a), as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all persons who were participants in the Plan and the beneficiaries of such participants ("Class"). Excluded from the Class are Ruben S. Martin III, and his family, and legal representatives, successors, heirs, and assigns of any such excluded persons.

45.     The Class Members are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that there were over 2,400 participants in the Plan during the class period. The Plan's Form 5500 filing for 2015 indicates that as of December 31, 2015, there were 2,470 participants and deceased participants whose beneficiaries are receiving or entitled to receive benefits in the Plan. Although the exact number and identities of Class Members are unknown to Plaintiffs at this time, this information is easily ascertainable from the Defendant and the Plan through discovery of their records.

46.     Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

A)     Whether Defendant acted as an ERISA fiduciary of the Plan in the ESOP Transaction;

B)     Whether Defendant breached its fiduciary duty to the Class to undertake an appropriate and independent investigation of the fair market value of MRMC stock in 2012 and 2013;

C)     Whether the Plan paid more than fair market value for MRMC shares in the 2012 and 2013 stages of the ESOP Transaction;

D)      Whether Defendant caused the Plan to engage in prohibited transactions in the 2012 and 2013 stages of the ESOP Transaction;

E)      The losses suffered by the Plan and Class members as a result of Defendant's ERISA violations; and

F)      The appropriate relief for Defendant's violations of ERISA.

47.      Plaintiffs' claims are typical of those of the Class because their claims arise from the same events, practices and/or course of conduct. For example, Plaintiffs, like other Plan participants in the Class, suffered a diminution in the value of their Plan accounts because the Plan paid an inflated price or prices and took on excessive loans for MRMC stock, and they continue to suffer such losses because Wilmington Trust has failed to take corrective action.

48.      Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

49.      Class certification of Plaintiffs' First and Second Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant, and/or because adjudications with respect to individual Class Members, as a practical matter, would be dispositive of the interests of the other Class Members not parties to the adjudications or substantially impart or impede their ability to protect their interests.

50.      In addition, class certification of Plaintiffs' First and Second Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

51.      The names and addresses of the Class Members are available from Defendant and the Plan. Notice will be provided to all members of the Class as required by Rule 23.

**FIRST CLAIM FOR RELIEF**
**[Breach of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a)]**

52.　　Plaintiffs incorporate the preceding paragraphs as though set forth herein.

53.　　ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

54.　　The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

55.　　The duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the participant receives adequate consideration for the assets in his or her account in the plan. Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

56.　　ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the

fiduciary.

57.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

58.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

59.     Defendant was required to undertake an appropriate and independent investigation of the fair market value of MRMC stock in 2012 and 2013 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed the fact that the valuations used for the 2012 and 2013 stages of the ESOP Transaction did not reflect the fair market value of the MRMC stock purchased by the Plan.

60.     Defendant breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

61.     Defendant's acts and omissions caused millions of dollars of losses to the Plan and Class members' accounts in an amount to be proven more specifically at trial.

## SECOND CLAIM FOR RELIEF
### [Causing and Engaging in Prohibited Transaction Forbidden by ERISA § 406, 29 U.S.C. § 1106]

62.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

63.     ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

64.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration

for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

65.     ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

66.     Upon information and belief, the sellers in the ESOP Transaction included, but were not limited to, Ruben S. Martin III; Scott D. Martin; CNRT, LLC; The Ruben S. Martin III Dynasty Trust; and/or MRMC.  At the time of the 2012 and 2013 stages of the ESOP Transaction, MRMC was an employer whose employees were covered by the Plan. Upon information and belief, Ruben S. Martin III was an employee, officer, director, fiduciary, and/or 10 percent or more shareholder directly or indirectly of MRMC at the time of the 2012 and 2013 stages of the ESOP Transaction. Upon information and belief, Scott D. Martin was an employee, officer, director, and/or 10 percent or more shareholder directly or indirectly of MRMC at the time of the 2012 stage of the ESOP Transaction. Upon information and belief, CNRT, LLC and The Ruben S. Martin III Dynasty Trust were corporations, partnerships or trusts of which (or in which) 50 percent or more of (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation, (ii) the capital interest or profits interest of such partnership, or (iii) the beneficial interest of such trust, was owned directly or indirectly or held by Ruben S. Martin III and/or other parties in interest.

67.     Defendant engaged in prohibited transactions in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), in the 2012 and 2013 stages of the ESOP Transaction, and the prohibited transactions did not meet the conditional exemption requirements of ERISA § 408(e), 29 U.S.C. § 1108(e). Defendant failed to ensure that the Plan paid no more than fair market value

for the MRMC stock purchased from parties in interest in the 2012 and 2013 stages of the ESOP Transaction.

68.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

69.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

70.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

71.     Defendant has caused millions of dollars of losses to the Plan and Class members' accounts by the prohibited transactions in an amount to be proven more specifically at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant the following relief:

**As to the First Claim for Relief:**

A.     Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives and their counsel as class counsel;

B.     Declare that Defendant has breached its fiduciary duties to the Plaintiff Class and/or knowingly participated in breaches of fiduciary duty;

C.     Enjoin Defendant from further violations of its fiduciary responsibilities, obligations and duties;

D.     Issue a preliminary and permanent injunction removing Defendant as fiduciary and Trustee of the Plan and/or barring Defendant from serving as fiduciary or Trustee of the Plan or other pension plans in the future, and appointing a new independent fiduciary as Trustee of the

Plan;

E.      Order that Defendant make good to the Plan and/or to any successor trust(s) the losses resulting from its breaches and restoring any profits it has made through use of assets of the Plan;

F.      Order that Defendant provide other appropriate equitable relief to the Plan, including but not limited to rescission, surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant;

G.      Order the proceeds of any recovery for the Plan to be allocated to the accounts of the Class to make them whole for any injury that they suffered as a result of the breaches of fiduciary duty in accordance with the Court's declaration;

H.      Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

I.      Order Defendant to pay prejudgment interest; and

J.      Award such other and further relief as the Court deems equitable and just.

**As to the Second Claim for Relief:**

A.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives and their counsel as class counsel;

B.      Declare that Defendant caused and engaged in prohibited transactions in violation of ERISA § 406(a)-(b), 29 U.S.C. § 1106(a)-(b);

C.      Enjoin Defendant from further violations of its responsibilities, obligations and duties under ERISA;

D.      Issue a preliminary and permanent injunction removing Defendant as fiduciary and Trustee of the Plan and/or barring Defendant from serving as fiduciary or Trustee of the Plan or other pension plans in the future, and appointing a new independent fiduciary as Trustee of the Plan;

E.      Order that Defendant makes good to the Plan and/or to any successor trust(s) the losses resulting from its breaches and restoring any profits it has made through use of assets of the Plan;

F.      Order that Defendant provide other appropriate equitable relief to the Plan, including but

16

not limited to rescission, surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant;

G. Order the proceeds of any recovery for the Plan to be allocated to the accounts of the Class to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

H. Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

I. Order Defendant to pay prejudgment interest; and

J. Award such other and further relief as the Court deems equitable and just.


Dated:     May 30, 2017                          Respectfully Submitted,


**BAILEY & GLASSER LLP**

Gregory Y. Porter (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
Patrick O. Muench (*pro hac vice*)
1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com
pmuench@baileyglasser.com

**FEINBERG, JACKSON,
WORTHMAN & WASOW LLP**

Daniel Feinberg (*pro hac vice*)
Todd Jackson (*pro hac vice*)
383 4th St., Suite 201
Oakland, CA 94607
Telephone: (510) 269-7998
Facsimile: (510) 269-7994
dan@feinbergjackson.com
todd@feinbergjackson.com

**BAILEY & GLASSER LLP**

By:  /s/ David A. Felice
David A. Felice (#4090)
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, DE  19808
Telephone: (302) 504-6333
Facsimile: (302) 504-6334
dfelice@baileyglasser.com

**THE BIFFERATO FIRM, P.A.**

Ian Connor Bifferato (#3273)
Kimberly L. Gattuso (#3733)
1007 N. Orange Street, 4th Floor
The Mill
Wilmington, DE 19801
Telephone: (302) 225-7600
cbifferato@tbf.legal
kgattuso@tbf.legal


*Attorneys for Plaintiffs*