**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LYLE J. GUIDRY and RODNEY CHOATE, on behalf of the MRMC ESOP and a class of all other persons similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>WILMINGTON TRUST, N.A., as successor to Wilmington Trust Retirement and Institutional Services Company,<br><br>    Defendant. | Cons. Case. No. 17-250-RGA |

**WILMINGTON TRUST, N.A.'S ANSWER TO
PLAINTIFFS' AMENDED COMPLAINT AND DEFENSES**

Defendant Wilmington Trust, N.A. ("Wilmington Trust"), by and through its undersigned counsel, answers the Amended Complaint ("Complaint") filed by Plaintiffs on May 30, 2017, D. 14, as follows:[1]

## I.    INTRODUCTION

1.    Plaintiffs Lyle J. Guidry and Rodney Choate bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on behalf of a class of participants (and their beneficiaries) in the MRMC ESOP (the "Plan" or "New ESOP") and on behalf of the Plan to require Defendant Wilmington Trust, N.A., the fiduciary trustee entrusted with their Plan, to make good to the Plan, Plaintiffs, and Class Members losses resulting from fiduciary violations, to restore to the Plan any profits that have been made by Defendant, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.  Plaintiffs and the Class they seek to represent have been cheated out of their hard-earned retirement benefits as a result of violations of ERISA's general fiduciary and prohibited transaction rules by Defendant in acquiring the shares of Martin Resource Management Corporation ("MRMC") in a two-stage transaction in 2012 and 2013.

**ANSWER:**  Wilmington Trust admits that Plaintiffs commenced this action

---

[1] All allegations in the Complaint that are not specifically admitted in this Answer are denied.

asserting certain claims under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Wilmington Trust denies the remaining allegations in paragraph 1.

2. The Plan is an employee benefit plan as defined by ERISA § 3(3), 29 U.S.C. § 1002(3), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1). The Plan is designed to be an "employee stock ownership plan" within the meaning of ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6). The Plan is sponsored by MRMC.

**ANSWER:** Paragraph 2 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that the MRMC ESOP is an employee stock ownership plan, and that Martin Resource Management Corporation ("MRMC") is the sponsor of the MRMC ESOP, but denies the remaining allegations in paragraph 2.

3. MRMC is and was at all relevant times a privately-held company. In 2012, in the first stage of the transaction, the Plan purchased from party in interest sellers 738 shares of MRMC common stock and 3,066.5 shares of MRMC preferred stock which, following a stock split in December 2012 and a conversion of the preferred stock to common stock in 2013, became 95,112.5 shares of common stock. In the second stage of the transaction, in 2013, the Plan purchased approximately 89,049.5 shares of MRMC common stock from party in interest sellers. Some of these first and second stage purchases were made with the proceeds of loans from parties in interest. Upon completion of the second stage of this transaction (both stages together, the "ESOP Transaction" or "Transaction"), the Plan attained majority ownership of MRMC. At that time, in 2013, MRMC became 100% employee owned.

**ANSWER:** Sentence 1 of paragraph 3 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that MRMC stock is not publicly-traded. Sentence 2 of paragraph 3 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that the MRMC ESOP acquired 738 shares of MRMC common stock and 3,066.5 shares of MRMC preferred stock in 2012, which were subsequently split and converted to 95,112.5 shares of common stock, but denies the remaining allegations in sentence 2 of paragraph 3. Sentence 3 of paragraph 3 alleges legal conclusions for which no response is required. To the extent a response is required, Wilmington Trust admits that the MRMC ESOP acquired 89,049.5 shares of MRMC common

stock in 2013, but denies the remaining allegations in sentence 3 of paragraph 3. Sentence 4 of paragraph 3 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that some of the MRMC ESOP's purchases were made with the proceeds of loans, but denies the remaining allegations in sentence 4 of paragraph 3. Wilmington Trust admits that the MRMC ESOP acquired more than fifty-percent of outstanding MRMC common stock in 2013, but denies the remaining allegations in sentence 5 of paragraph 3. Wilmington Trust denies the allegations in sentence 6 of paragraph 3.

4.     Wilmington Trust represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority to act on behalf of the Plan in the Transaction.

**ANSWER:** Paragraph 4 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that it represented the MRMC ESOP as trustee during the MRMC ESOP's acquisition of MRMC stock in 2012 and 2013, but denies the remaining allegations in paragraph 4.

5.     The ESOP Transaction allowed party in interest sellers to unload their interests in MRMC at an inflated price or prices, and saddle Plan participants with millions of dollars of debt payable to parties in interest to finance the Transaction. Wilmington Trust failed to fulfill its duties to the Plan and Plan participants, including Plaintiffs.

**ANSWER:** Paragraph 5 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust denies the allegations in paragraph 5.

6.     The challenged Transaction in this case is similar to the ESOP transaction that gave rise to the ERISA claims in *Brundle v. Wilmington Trust N.A.*, No. 1:15CV1494 (LMB/IDD), 2017 WL 979106 (E.D. Va. Mar. 13, 2017). This action has the same defendant; same kind of transaction; same investment bank; same valuation firm; and same bad outcome for the Plan's participants. Indeed, the *Brundle* court even noted that "Wilmington [Trust], CSG [the investment bank], and SRR [the valuation firm] were actually working on another ESOP transaction, for Martin Resources, at the same time they were negotiating the Constellis deal [the ESOP transaction at issue in *Brundle*]." *Id*. at *25. In *Brundle*, the court found that Wilmington Trust had a "tendency to rubber stamp whatever [the ESOP sponsor] and [valuation firm] put in front of it, thereby violating its fiduciary duty to exercise prudence." *Id*. at *24. Following trial, the *Brundle* court ruled that Wilmington Trust engaged in a prohibited transaction by failing to

3

ensure that the ESOP paid no more than adequate consideration for company stock and, as a result, damaged the ESOP by agreeing to overpay by over $29 million for the stock. *Id*. at *31.

**ANSWER:** Wilmington Trust denies the allegations in paragraph 6.

7. Plaintiffs bring this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by Plaintiffs and similarly situated participants, resulting from Wilmington Trust's engaging in, and causing the Plan to engage in, prohibited transactions and fiduciary violations under ERISA.

**ANSWER:** Wilmington Trust admits that Plaintiffs commenced this action asserting

certain claims under ERISA, but denies the remaining allegations in paragraph 7.

## II.    JURISDICTION

8. This action arises under Title I of ERISA, 29 U.S.C. § 1001 *et seq*., and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to enjoin acts and practices that violate the provisions of Title I of ERISA, to require Wilmington Trust to make good to the Plan losses resulting from its violations of ERISA, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

**ANSWER:** Wilmington Trust admits that Plaintiffs commenced this action asserting

certain claims under ERISA, but denies the remaining allegations in paragraph 8.

9. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 29 U.S.C. § 1331.

**ANSWER:** Paragraph 9 alleges legal conclusions for which no answer is required. To

the extent a response is required, Wilmington Trust admits that this Court has subject matter

jurisdiction over Plaintiffs' claims related to the MRMC ESOP's acquisition of MRMC stock in

2013 under ERISA § 502, 29 U.S.C. § 1132 and 29 U.S.C. § 1331, but denies the remaining

allegations in paragraph 9.

## III.    VENUE

10. Venue lies in the District of Delaware pursuant to ERISA § 502(e)(2), 29 U.S.C.§ 1132(e)(2), because Defendant resides or may be found in this District, and/or breaches took place in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because Defendant

resides within this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

**ANSWER:** Paragraph 10 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that venue is proper, but denies the remaining allegations in paragraph 10.

## IV.    PARTIES

11.    Plaintiff Lyle J. Guidry is a former employee of MRMC. At all relevant times, Plaintiff Guidry has been a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan, holding MRMC stock in his Plan individual account. He was employed by MRMC as a truck driver.

**ANSWER:** Wilmington Trust admits the allegations in sentence 1 of paragraph 11. Sentence 2 of paragraph 11 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington trust admits that Lyle Guidry is a participant in the MRMC ESOP, but denies the remaining allegations in sentence 2 of paragraph 11. Wilmington Trust denies the allegations in sentence 3 of paragraph 11.

12.    Plaintiff Rodney Choate is a former employee of MRMC. At all relevant times, Plaintiff Choate has been a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan, holding MRMC stock in his Plan individual account. He was employed by MRMC as a Vessel Captain, Inland Group.

**ANSWER:** Wilmington Trust admits the allegations in sentence 1 of paragraph 12. Sentence 2 of paragraph 12 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington trust admits that Lyle Guidry is a participant in the MRMC ESOP, but denies the remaining allegations in sentence 2 of paragraph 12. Wilmington Trust denies the allegations in sentence 3 of paragraph 12.

13.    Defendant Wilmington Trust is a trust company chartered in Delaware. Its main office is at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington Trust is a wholly-owned subsidiary of Wilmington Trust Corporation, which is also headquartered at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington Trust Corporation is a wholly-

owned division of M&T Bank Corporation. M&T Bank Corporation is headquartered in Buffalo, New York.

**ANSWER:** Wilmington Trust admits the allegations in sentence 1 of paragraph 13. Wilmington Trust admits that its principal place of business and headquarters and the principal place of business and headquarters of Wilmington Trust Corporation, are at 1100 North Market Street, Wilmington, Delaware 19890, but denies the remaining allegations in sentences 2 and 3 of paragraph 13. Wilmington Trust denies the allegations in sentence 4 of paragraph 13. Wilmington Trust admits the allegations in sentence 5 of paragraph 13.

14.     At all relevant times, Defendant Wilmington Trust, N.A., or its predecessor, Wilmington Trust Retirement and Institutional Services Company (together, "Wilmington Trust"), has been a Trustee of the Plan within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a). Defendant Wilmington Trust at all relevant times has been a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the Plan and/or exercised authority or control respecting management or distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. Defendant Wilmington Trust at all relevant times has also been a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14).

**ANSWER:** Wilmington Trust admits that it is a successor entity to Wilmington Trust Retirement and Institutional Services Company. The remainder of paragraph 14 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that it acted as the transactional trustee for the MRMC ESOP when it acquired MRMC stock in 2012 and 2013, but denies the remaining allegations in paragraph 14.

## V.     FACTS

15.     MRMC is a privately-held company whose initial predecessor was incorporated in 1951 as a supplier of products and services to drilling rig contractors. Since then, MRMC has expanded its operations through acquisitions and internal expansion to provide services to the producers and purchasers of petroleum products and by-products and other bulk liquids.

**ANSWER:** Wilmington Trust admits the allegations in paragraph 15.

16.     MRMC is an S-Corporation. MRMC stock is not readily tradable on an established securities market.

**ANSWER:** Wilmington Trust admits the allegations in paragraph 16.

17.     As of December 31, 2012 and December 31, 2013, MRMC owned 19.2% and 19.1%, respectively, of the total outstanding limited partner units of Martin Midstream Partners, L.P. ("Martin Midstream"), a publicly traded limited partnership.  Furthermore, MRMC owns and controls the general partner of Martin Midstream, and directs Martin Midstream's business operation through its ownership and control of the general partner.  MRMC is an important supplier and customer of Martin Midstream, and vice versa. Under the terms of an omnibus agreement dated November 1, 2002 between MRMC and Martin Midstream, the employees of MRMC are responsible for conducting the business of Martin Midstream and operating Martin Midstream's assets.

**ANSWER:** Wilmington Trust admits the allegations in sentence 1 of paragraph 17.

Wilmington Trust admits that MRMC controls the general partner of Martin Midstream and

directs Martin Midstream's business, but denies the remaining allegations in sentence 2 of

paragraph 17.  Wilmington Trust admits sentence 3 of paragraph 17.  Wilmington Trust admits

that MRMC and Martin Midstream entered into an omnibus agreement dated November 1, 2002

pursuant to which MRMC agreed to provide certain employee, management, and accounting

services to Martin Midstream.

18.     Ruben S. Martin III has been President and Chairman of the Board of Directors of MRMC since 1981 and has served in various capacities with the company since 1974. Ruben S. Martin III has also served as President, CEO and Director of Martin Midstream since June 2002. For many years, MRMC was jointly managed by Ruben S. Martin III and his brother, Scott D. Martin. Beginning in or about 2006, the brothers' relationship began to deteriorate regarding the management of MRMC and an internecine power struggle over the control of MRMC arose between them.  As part of the intrafamily dispute, MRMC and various Martin family members filed lawsuits against Ruben S. Martin III or Scott D. Martin. In all, there were nearly a dozen lawsuits filed by MRMC, family members aligned with Ruben S. Martin III, or family members aligned with Scott D. Martin.

**ANSWER:** Wilmington Trust admits the allegations in sentences 1 and 2 of paragraph

18.  Wilmington Trust denies the allegations in sentences 3 and 4 of paragraph 18.  Wilmington

Trust admits that there were a number of lawsuits filed between and among MRMC and various

members of the Martin family, but denies the remaining allegations in sentences 5 and 6 of

paragraph 18.

19.     Effective October 1, 1984, MRMC adopted the Martin Employee Stock Ownership Plan ("Old ESOP"). The Old ESOP invested primarily in MRMC stock. Plaintiffs participated in the Old ESOP.

**ANSWER:** Wilmington Trust admits the allegations in paragraph 19.

20.     MRMC adopted the New ESOP effective January 1, 2012. The New ESOP also invested primarily in MRMC stock. Beginning in 2012, MRMC ceased all contributions to the Old ESOP, renamed the Old ESOP the "Martin Employees' Stock Profit Sharing Plan," and began making contributions to the New ESOP.

**ANSWER:** Wilmington Trust admits the allegations in paragraph 20.

21.     The Plan is an individual account plan under which a separate individual account is established for each participant. Employees of MRMC and its subsidiaries participate in the Plan. MRMC is the Plan's sponsor, administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14).

**ANSWER:** Wilmington Trust admits the allegations in sentences 1 and 2 of paragraph

21. Sentence 3 alleges legal conclusions for which no answer is required. To the extent an

answer is required, Wilmington Trust admits the allegations in sentence 3 of paragraph 21.

22.     In or about October 2012, Ruben S. Martin III, Scott D. Martin, and MRMC agreed to the settlement of the longstanding litigation among them. As part of the settlement, MRMC purchased all MRMC shares owned by Scott D. Martin and certain other parties involved in the litigation. Upon information and belief, MRMC sold these shares to the Plan in the first stage of the ESOP Transaction.

**ANSWER:** Wilmington Trust admits the allegations in sentences 1 and 2 of paragraph

22. Wilmington Trust denies the allegations in sentence 3 of paragraph 22.

23.     As a result of the settlement of the Martin lawsuits, MRMC established the New ESOP and used the New ESOP to directly or indirectly purchase additional MRMC stock from entities related to the Martin family in the ESOP Transaction.

**ANSWER:** Wilmington Trust denies the allegations in paragraph 23.

24.     MRMC appointed Wilmington Trust as Trustee of the Plan in 2012 to represent the Plan in the proposed ESOP Transaction. Wilmington Trust continued in that role in 2013 in the second stage of the ESOP Transaction.

**ANSWER:**  Wilmington Trust admits that it served as trustee of the MRMC ESOP during the MRMC ESOP's acquisitions of MRMC stock in 2012 and 2013, but denies the remaining allegations in paragraph 24.

25.     As Trustee, Wilmington had sole and exclusive authority to approve both stages of the ESOP Transaction on behalf of the Plan, including the price the Plan paid for MRMC stock. Wilmington Trust was required to ensure that any transactions between the Plan and the selling shareholders, including acquisitions of MRMC stock by the Plan and loans to the Plan, were fair and reasonable, and to make sure that the Plan paid no more than fair market value for MRMC stock.

**ANSWER:**  Paragraph 25 alleges legal conclusions for which no answer is required.  To the extent a response is required, Wilmington Trust admits that it served as trustee of the MRMC ESOP during 2012 and 2013 and approved the MRMC ESOP's acquisition of MRMC stock during that time, but denies the remaining allegations in paragraph 25.

26.     In 2012, Wilmington Trust, in its capacity as Trustee of the Plan, caused the Plan to purchase approximately 738 shares of MRMC common stock using proceeds from a cash contribution by MRMC from a party in interest, and approximately 3,066.5 shares of MRMC preferred stock from a party in interest using the proceeds of a loan from MRMC.  That loan carried a 2.36% interest rate per annum, with a maturity date of December 31, 2027. At year-end 2012, the Plan owed MRMC $198,679,452 on that loan. As a result of this first stage transaction, the Plan owned a minority interest in MRMC.

**ANSWER:**  Sentence 1 of paragraph 26 alleges legal conclusions for which no response is required.  To the extent a response is required, Wilmington Trust admits that it acted as trustee of the MRMC ESOP when the MRMC ESOP acquired 738 shares of MRMC common stock and approximately 3,066.5 shares of MRMC preferred stock with cash and debt from MRMC, but denies the remaining allegations in sentence 1 of paragraph 26.  Wilmington Trust admits the allegations in sentences 2 and 3 of paragraph 26.  Wilmington Trust admits that the MRMC

ESOP owned less than fifty-percent of outstanding MRMC stock following its 2012 acquisition

of MRMC stock, but denies the remaining allegations in sentence 4 of paragraph 26.

27.     In December 2012, as the result of an MRMC stock split whereby each issued and
outstanding share was converted into 25 shares, the Plan's 738 common shares became 18,450
common shares, and the Plan's 3,066.5 preferred shares became 76,662.5 preferred shares.

**ANSWER:** Wilmington Trust admits the allegations in paragraph 27.

28.     In 2013, the Plan's 76,662.5 shares of preferred stock were converted into
76,662.5 shares of common stock.

**ANSWER:** Wilmington Trust admits the allegations in paragraph 28.

29.     In 2013, Wilmington Trust, in its capacity as Trustee of the Plan, caused the Plan
to purchase approximately 32,194 shares of MRMC common stock from a party in interest using
cash, dividends and the proceeds from a loan from the Company.  The Plan then purchased an
additional 56,855 shares of MRMC common stock from parties in interest using cash and the
proceeds from subordinated notes.  Upon information and belief, the selling shareholders in the
2013 transactions included The Ruben S. Martin III Dynasty Trust and CNRT LLC.

**ANSWER:** Sentence 1 of paragraph 29 alleges legal conclusions for which no answer is

required.  To the extent a response is required, Wilmington Trust admits that the MRMC ESOP

acquired 32,194 shares of MRMC common stock using cash and the proceeds of a loan from

MRMC in December 2013, but denies the remaining allegations in sentence 1 of paragraph 29.

Sentence 2 of paragraph 29 alleges legal conclusions for which no answer is required.  To the

extent a response is required, Wilmington Trust admits that the MRMC ESOP acquired 56,855

shares of MRMC common stock in December 2013 using cash and the proceeds from

subordinated notes, but denies the remaining allegations in sentence 2 of paragraph 29.

Wilmington Trust admits that The Ruben S. Martin III Dynasty Trust and CNRT LLC sold

shares of MRMC common stock in December 2013, but denies the remaining allegations in

sentence 3 of paragraph 29.

30.     Ruben S. Martin III is the registered agent for CNRT LLC.  The registered
address for CNRT LLC is the address for MRMC's corporate headquarters in Kilgore, Texas.

**ANSWER:** Wilmington Trust admits the allegations in paragraph 30.

31.     Upon completion of the first and second stages of the ESOP Transaction, the Old ESOP and the New ESOP owned 100% of MRMC. As of the end of 2013, the New ESOP owned approximately 81.4% of the outstanding common stock of MRMC.

**ANSWER:** Wilmington Trust admits that the MRMC ESOP owned approximately 81%

of the outstanding common stock of MRMC on December 31, 2013, but denies the remaining

allegations in paragraph 31.

32.     At year-end 2013, the Plan owed $83,666,672 on the Class C Promissory Note to CNRT, LLC, and it owed $302,192 on the Class C Promissory Note to The Ruben S. Martin III Dynasty Trust. The CNRT loan and Dynasty Trust loan both carried a 5% interest rate per annum. On the CNRT loan, the principal was due on the maturity date of December 31, 2022. On the Dynasty Trust loan, the principal was due on the maturity date of December 23, 2022.

**ANSWER:** Wilmington Trust admits the allegations in sentences 1 and 2 of paragraph

32. Wilmington Trust denies the allegations in sentences 3 and 4 of paragraph 32.

33.     The "Notes to the Financial Statements" attached to the Plan's Forms 5500 state that: "The Plan invests in Company common stock and has indebtedness with the Company. These are related party and party-in-interest transactions. The Plan's service providers are parties-in-interest under ERISA."

**ANSWER:** Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or

cited to the MRMC ESOP's forms 5500 and relies on the forms 5500 to speak for themselves.

34.     Ruben S. Martin III remained President and Chairman of the Board of Directors of MRMC following the ESOP Transaction. In addition, Robert D. Bondurant served as Executive Vice President, Chief Financial Officer and Director, and Randall L. Tauscher served as Executive Vice President, Chief Operating Officer and Director, both before and after the ESOP Transaction.

**ANSWER:** Wilmington Trust admits the allegations in paragraph 34.

35.     CSG Partners, LLC ("CSG Partners"), a New York investment bank, advised MRMC in the ESOP Transaction.

**ANSWER:** Wilmington Trust admits that CSG Partners, LLC advised MRMC in 2012

and 2013, but denies the remaining allegations in paragraph 35.

36.     CSG marketing materials say it can structure ESOP transactions such that selling shareholders will continue to control the company, exercising control through the board of directors and other corporate governance tools, even where the ESOP purchases 100% of the company.

**ANSWER:**  Wilmington Trust lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36.

37.     Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. CSG Partners recommended to MRMC that MRMC retain Defendant Wilmington Trust to represent the Plan as Trustee in the ESOP Transaction. The appraisals relied upon by Defendant Wilmington Trust in the ESOP Transaction included a control premium even though Ruben S. Martin III retained control of MRMC following the ESOP Transaction. Further, the Plan did not receive a discount for lack of control in the ESOP Transaction.

**ANSWER:**  Sentence 1 of paragraph 37 contains no allegations requiring a response.

Wilmington Trust lacks knowledge or information sufficient to form a belief as to the truth of the allegations in sentence 2 of paragraph 37.  Wilmington Trust denies the allegations in sentence 3 of paragraph 37.  Wilmington Trust admits that Stout Risius Ross, Inc. did not apply a discount for lack of control when valuing the shares acquired by the MRMC ESOP in 2012 or 2013, but denies the remaining allegations in sentence 4 of paragraph 37.

38.     Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The appraisals relied upon by Defendant Wilmington Trust in the ESOP Transaction did not adequately account for:
   a) the debt burden taken on by MRMC in the Transaction;
   b) MRMC and Martin Midstream's high degree of leverage;
   c) the cyclical nature of the petroleum industry and its impact on MRMC;
   d) the costs imposed on MRMC by the settlement with Scott D. Martin and other family members; and/or
   e) the disruptions in the business operations and management of MRMC and Martin Midstream caused by the control struggle between Ruben S. Martin III and Scott D. Martin, and the settlement of their dispute.

**ANSWER:**  Sentence 1 of paragraph 38 contains no allegations requiring a response.

Wilmington Trust denies the remaining allegations in paragraph 38.

39. Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Defendant did not perform due diligence similar to the due diligence that is performed by third-party buyers in large corporate transactions in the course of the ESOP Transaction. Wilmington Trust believed a lesser degree of due diligence was needed for ESOP purchases of businesses than for non-ESOP-buyers' purchases of businesses, which Wilmington Trust distinguished as "real world" transactions.

**ANSWER:** Wilmington Trust denies the allegations in paragraph 39.

40. Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan overpaid for MRMC stock in the ESOP Transaction due to Defendant Wilmington Trust's reliance on unrealistic growth projections, unreliable or out-of-date financial statements, inappropriate comparable public companies, and improper discount rates; Wilmington Trust's failure to test assumptions, and failure to question or challenge underlying assumptions; and/or other factors that rendered its valuation of MRMC stock in the ESOP Transaction faulty.

**ANSWER:** Wilmington Trust denies the allegations in paragraph 40.

41. Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Defendant Wilmington Trust had divided loyalties in the ESOP Transaction because Wilmington Trust hoped to receive additional referrals from CSG Partners. In addition, Defendant Wilmington Trust hoped that MRMC would retain it to serve as the Plan's ongoing Trustee after the ESOP Transaction and thereby receive annual fees for trustee services.

**ANSWER:** Wilmington Trust denies the allegations in paragraph 41.

42. The Plan paid $375,478,400 for the MRMC stock purchased from parties in interest in the ESOP Transaction. As of December 31, 2013, however, the Plan reported that its MRMC stock was only worth $189,852.213. Thus, the Plan reported that its stock had lost approximately half its value a short time after the Plan completed its transactions with parties in interest.

**ANSWER:** Wilmington Trust denies the allegations in sentence 1 of paragraph 42.

Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to the MRMC

ESOP's forms 5500 and relies on the forms 5500 to speak for themselves. Wilmington Trust

denies the remaining allegations in paragraph 42.

43. The Plan's MRMC stock has continued to decline in value. As of December 31, 2015, the Plan reported that its MRMC stock was only worth $151,210,743.

**ANSWER:** The allegations in sentence 1 of paragraph 43 are ambiguous. Wilmington Trust lacks knowledge or information sufficient to form a belief as to the truth of the allegations in sentence 1 of paragraph 43. Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to the MRMC ESOP's forms 5500 in sentence 2 of paragraph 43 and relies on the forms 5500 to speak for themselves.

## VI.    CLASS ACTION ALLEGATIONS

44.    Plaintiffs bring their Claims for Relief for violations of ERISA § 502(a), 29 U.S.C. § 1132(a), as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all persons who were participants in the Plan and the beneficiaries of such participants ("Class"). Excluded from the Class are Ruben S. Martin III, and his family, and legal representatives, successors, heirs, and assigns of any such excluded persons.

**ANSWER:** Wilmington Trust admits that Plaintiffs purport to bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all MRMC ESOP participants with the exception of Ruben S. Martin III and certain of his family members and affiliates. Wilmington Trust denies the remaining allegations in paragraph 44.

45.    The Class Members are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that there were over 2,400 participants in the Plan during the class period. The Plan's Form 5500 filing for 2015 indicates that as of December 31, 2015, there were 2,470 participants and deceased participants whose beneficiaries are receiving or entitled to receive benefits in the Plan. Although the exact number and identities of Class Members are unknown to Plaintiffs at this time, this information is easily ascertainable from the Defendant and the Plan through discovery of their records.

**ANSWER:** Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to the MRMC ESOP's forms 5500 in sentences 2 and 3 of paragraph 45 and relies on the forms 5500 to speak for themselves. Wilmington Trust denies the remaining allegations of paragraph 45.

46.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:
   A)    Whether Defendant acted as an ERISA fiduciary of the Plan in the ESOP Transaction;

14

B)    Whether Defendant breached its fiduciary duty to the Class to undertake an appropriate and independent investigation of the fair market value of MRMC stock in 2012 and 2013;

C)    Whether the Plan paid more than fair market value for MRMC shares in the 2012 and 2013 stages of the ESOP Transaction;

D)    Whether Defendant caused the Plan to engage in prohibited transactions in the 2012 and 2013 stages of the ESOP Transaction;

E)    The losses suffered by the Plan and Class members as a result of Defendant's ERISA violations; and

F)    The appropriate relief for Defendant's violations of ERISA.

**ANSWER:** Paragraph 46 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust denies the allegations in paragraph 46.

47.    Plaintiffs' claims are typical of those of the Class because their claims arise from the same events, practices and/or course of conduct. For example, Plaintiffs, like other Plan participants in the Class, suffered a diminution in the value of their Plan accounts because the Plan paid an inflated price or prices and took on excessive loans for MRMC stock, and they continue to suffer such losses because Wilmington Trust has failed to take corrective action.

**ANSWER:** Paragraph 47 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust denies the allegations in paragraph 47.

48.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

**ANSWER:** Sentence 1 of paragraph 48 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust denies the allegations in sentence 1 of paragraph 48. Wilmington Trust lacks knowledge or information sufficient to form a belief as to the truth of the allegations in sentence 2 of paragraph 48.

49.    Class certification of Plaintiffs' First and Second Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant, and/or because adjudications with respect to individual Class Members, as a practical matter, would be dispositive of the interests of the other Class Members not parties to the adjudications or substantially impart or impede their ability to protect their interests.

**ANSWER:** Paragraph 49 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust denies the allegations in paragraph 49.

50. In addition, class certification of Plaintiffs' First and Second Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

**ANSWER:** Paragraph 50 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust denies the allegations in paragraph 50.

51. The names and addresses of the Class Members are available from Defendant and the Plan. Notice will be provided to all members of the Class as required by Rule 23.

**ANSWER:** Wilmington Trust lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

## FIRST CLAIM FOR RELIEF
### [Breach of Fiduciary Duty Under ERISA § 404(a), 29. U.S.C. § 1104(a)]

52. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Wilmington Trust reasserts its responses to paragraphs 1 through 51 of the Complaint and incorporates the same as if fully set forth herein.

53. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

**ANSWER:** Paragraph 53 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to language from certain statutes and rules and relies on these statutes and

rules to speak for themselves.  Wilmington Trust denies the remaining allegations in paragraph

53.

54.    The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

**ANSWER:**  Paragraph 54 alleges legal conclusions for which no answer is required.  To

the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased,

quoted, and/or cited to language from certain statutes, rules, and court opinions and relies on

these statutes, rules, and court opinions to speak for themselves.  Wilmington Trust denies the

remaining allegations in paragraph 54.

55.    The duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the participant receives adequate consideration for the assets in his or her account in the plan. Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

**ANSWER:**  Paragraph 55 alleges legal conclusions for which no answer is required.  To

the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased,

quoted, and/or cited to language from certain statutes, rules, and court opinions and relies on

these statutes, rules, and court opinions to speak for themselves.  Wilmington Trust denies the

remaining allegations in paragraph 55.

56.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

**ANSWER:** Paragraph 56 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to language from certain statutes and rules and relies on these statutes and rules to speak for themselves. Wilmington Trust denies the remaining allegations in paragraph 56.

57. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

**ANSWER:** Paragraph 57 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to language from certain statutes and rules and relies on these statutes and rules to speak for themselves. Wilmington Trust denies the remaining allegations in paragraph 57.

58. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

**ANSWER:** Paragraph 58 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to language from certain statutes, rules, and court opinions and relies on these statutes, rules, and court opinions to speak for themselves. Wilmington Trust denies the remaining allegations in paragraph 58.

59. Defendant was required to undertake an appropriate and independent investigation of the fair market value of MRMC stock in 2012 and 2013 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed the fact that the valuations used for the 2012 and 2013 stages of the ESOP Transaction did not reflect the fair market value of the MRMC stock purchased by the Plan.

**ANSWER:** Paragraph 59 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased,

quoted, and/or cited to language from certain statutes, rules, and court opinions and relies on these statutes, rules, and court opinions to speak for themselves. Wilmington Trust denies the remaining allegations in paragraph 59.

60. Defendant breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

**ANSWER:** Paragraph 60 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust denies the allegations in paragraph 60.

61. Defendant's acts and omissions caused millions of dollars of losses to the Plan and Class members' accounts in an amount to be proven more specifically at trial.

**ANSWER:** Paragraph 61 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust denies the allegations in paragraph 61.

## SECOND CLAIM FOR RELIEF
### [Causing and Engaging in Prohibited Transaction Forbidden by ERISA § 406, 29 U.S.C. § 1106]

62. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

**ANSWER:** Wilmington Trust reasserts its responses to paragraphs 1 through 61 of the Complaint and incorporates the same as if fully set forth herein.

63. ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

**ANSWER:** Paragraph 63 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to language from certain statutes and rules and relies on these statutes and rules to speak for themselves. Wilmington Trust denies the remaining allegations in paragraph 63.

64.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

**ANSWER:**  Paragraph 64 alleges legal conclusions for which no answer is required.  To the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to language from certain statutes and rules and relies on these statutes and rules to speak for themselves.  Wilmington Trust denies the remaining allegations in paragraph 64.

65.     ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

**ANSWER:**  Paragraph 65 alleges legal conclusions for which no answer is required.  To the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to language from certain statutes and rules and relies on these statutes and rules to speak for themselves.  Wilmington Trust denies the remaining allegations in paragraph 65.

66.     Upon information and belief, the sellers in the ESOP Transaction included, but were not limited to, Ruben S. Martin III; Scott D. Martin; CNRT, LLC; The Ruben S. Martin III Dynasty Trust; and/or MRMC.  At the time of the 2012 and 2013 stages of the ESOP Transaction, MRMC was an employer whose employees were covered by the Plan. Upon information and belief, Ruben S. Martin III was an employee, officer, director, fiduciary, and/or 10 percent or more shareholder directly or indirectly of MRMC at the time of the 2012 and 2013 stages of the ESOP Transaction. Upon information and belief, Scott D. Martin was an employee, officer, director, and/or 10 percent or more shareholder directly or indirectly of MRMC at the time of the 2012 stage of the ESOP Transaction. Upon information and belief, CNRT, LLC and The Ruben S. Martin III Dynasty Trust were corporations, partnerships or trusts of which (or in which) 50 percent or more of (i) the combined voting power of all

classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation, (ii) the capital interest or profits interest of such partnership, or (iii) the beneficial interest of such trust, was owned directly or indirectly or held by Ruben S. Martin III and/or other parties in interest.

**ANSWER:** Wilmington Trust admits that Ruben S. Martin III; Scott D. Martin; CNRT, LLC; The Ruben S. Martin III Dynasty Trust; and/or MRMC sold shares of MRMC stock in 2012 and 2013, but denies the remaining allegations in sentence 1 of paragraph 66. Sentences 2 through 5 of paragraph 66 allege legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that Ruben S. Martin III was an officer and director of MRMC at the time of the MRMC ESOP's 2012 and 2013 acquisitions of MRMC stock, but denies the allegations in sentences 2 through 5 of paragraph 66.

67.     Defendant engaged in prohibited transactions in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), in the 2012 and 2013 stages of the ESOP Transaction, and the prohibited transactions did not meet the conditional exemption requirements of ERISA § 408(e), 29 U.S.C. § 1108(e). Defendant failed to ensure that the Plan paid no more than fair market value for the MRMC stock purchased from parties in interest in the 2012 and 2013 stages of the ESOP Transaction.

**ANSWER:** Paragraph 67 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust denies the allegations in paragraph 67.

68.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

**ANSWER:** Paragraph 68 alleges legal conclusions for which no answer is required. To the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to language from certain statutes and rules and relies on these statutes and rules to speak for themselves. Wilmington Trust denies the remaining allegations in paragraph 68.

69.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

**ANSWER:** Paragraph 69 alleges legal conclusions for which no answer is required.  To the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to language from certain statutes and rules and relies on these statutes and rules to speak for themselves.  Wilmington Trust denies the remaining allegations in paragraph 69.

70.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

**ANSWER:** Paragraph 70 alleges legal conclusions for which no answer is required.  To the extent a response is required, Wilmington Trust admits that Plaintiffs have paraphrased, quoted, and/or cited to language from certain statutes and rules and relies on these statutes and rules to speak for themselves.  Wilmington Trust denies the remaining allegations in paragraph 70.

71.     Defendant has caused millions of dollars of losses to the Plan and Class members' accounts by the prohibited transactions in an amount to be proven more specifically at trial.

**ANSWER:** Paragraph 71 alleges legal conclusions for which no answer is required.  To the extent a response is required, Wilmington Trust denies the allegations in paragraph 71.

## PRAYER FOR RELIEF

In response to Plaintiffs' Prayer for Relief and each subpart thereof, Wilmington Trust denies that Plaintiffs are entitled to any of the relief requested or to any relief whatsoever, and request that the Plaintiffs' Complaint be dismissed with prejudice.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails, in whole or in part, to state a cause of action upon which relief can be granted.

### SECOND DEFENSE

Plaintiffs' claims are or may be barred, in whole or in part, by Plaintiffs' lack of standing to assert such claims.

### THIRD DEFENSE

Plaintiffs' claims are or may be barred, in whole or in part, by the applicable statutes of limitation or repose.

### FOURTH DEFENSE

Plaintiffs' claims are or may be barred, in whole or in part, because the Court lacks subject matter jurisdiction over such claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### FIFTH DEFENSE

Some or all of Plaintiffs' claims are or may be barred by the doctrines of laches, waiver, release, and/or ratification.

### RESERVATION OF DEFENSES

Wilmington Trust reserves the right to assert any additional affirmative defenses and matters in avoidance that may be discovered or disclosed during the court of additional investigation and discovery.

Dated: June 26, 2017

OF COUNSEL:

GROOM LAW GROUP, CHARTERED

Michael J. Prame (*pro hac vice*)
Lars C. Golumbic (*pro hac vice*)
Natasha S. Fedder (*pro hac vice*)
Andrew D. Salek-Raham (*pro hac vice*)
1701 Pennsylvania Ave., N.W., Suite 1200
Washington, D.C. 20006
Telephone:  (202) 857-0620
mprame@groom.com
lgolumbic@groom.com
nfedder@groom.com
asalek-raham@groom.com

Respectfully submitted by:

MORRIS JAMES LLP

      */s/ Albert H. Manwaring*
P. Clarkson Collins (#739)
Albert H. Manwaring (#4339)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone:  (302) 888-6800
pcollins@morrisjames.com
amanwaring@morrisjames.com

*Attorneys for Defendant Wilmington Trust, N.A.*