IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LYLE J. GUIDRY and RODNEY CHOATE, on behalf of the MRMC ESOP and a class of all other persons similarly situated,

    Plaintiff,

v.

WILMINGTON TRUST, N.A., as successor to Wilmington Trust Retirement and Institutional Services Company,

    Defendant.

Civil Action No. 17-250-RGA

MEMORANDUM OPINION

David A. Felice, BAILEY & GLASSER, LLP, Wilmington, DE; Gregory Y. Porter, Patrick Muench, and Ryan T. Jenny, BAILEY & GLASSER, LLP, Washington, DC; Daniel Feinberg and Todd Jackson, FEINBERG, JACKSON, WORTHMAN & WASOW LLP, Berkeley, CA, attorneys for Plaintiff.

Albert H. Manwaring, IV, MORRIS JAMES LLP, Wilmington, DE; Michael J. Prame, Edward J. Meehan, Ross P. McSweeney, GROOM LAW GROUP, Washington, D.C., attorneys for Defendant.

December 10, 2019


**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiff Rodney Choate alleges Defendant Wilmington Trust breached its fiduciary duties under the Employee Retirement Income Security Act (ERISA) by causing an employee pension plan to overpay for company stock. Currently before the Court is Plaintiff's Motion for Class Certification. (D.I. 80). For the reasons discussed below, the motion is GRANTED.

## I. BACKGROUND

The Martin Resource Management Corporation (MRMC) is a privately-held company that transports petroleum products and other bulk liquids. (D.I. 31 at 7). In January 2012, MRMC created an Employee Stock Ownership Plan (ESOP)—a retirement benefit for employees made up primarily of stock in the employer company. (*Id.* at 8). MMRC appointed Wilmington Trust as the trustee of the ESOP. (*Id.* at 9). Under ERISA, an ESOP trustee may not pay more than "adequate consideration" for the employer's stock. 29 U.S.C. § 1108(e)(1).

Plaintiff is challenging two ESOP transactions. In the first transaction, on October 2, 2012, the Plan purchased 3,066.5 shares of MRMC preferred stock and 738 shares of MRMC common stock for $233 million. (D.I. 31 at 9). After a stock split and conversion of preferred stock into common stock, this transaction became 95,112.5 shares of common stock. (*Id.* at 10). In the second transaction, on December 23, 2013, the Plan bought an additional 89,049.5 shares of MMRC common stock for $142.5 million. (*Id.* at 11). According to Plaintiff, the shares from both transactions are only worth about $79 million now. (D.I. 81 at 1). Wilmington Trust is responsible for both transactions in its capacity as trustee of the ESOP. (D.I. 31 at 9, 11).

Lyle J. Guidry sued Wilmington Trust over the transactions in March 2017, and Rodney Choate sued the next month. The cases were consolidated in May 2017. (D.I. 12). Guidry died on August 26, 2018, leaving Choate to pursue this action. (D.I. 124).

1

Choate was employed as a boat captain for an MRMC subsidiary from November 2006 until about April 2013. (D.I. 85, Ex. 5, "Choate Decl.," at 1). He became a participant in the ESOP when it started in 2012. (*Id.*) Because he left the company before his retirement account fully vested, Choate forfeited about 80 percent of his potential benefits. (D.I. 93 at 3).

## II. LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). To qualify for this exception, a party "must affirmatively demonstrate his compliance" with Fed. R. Civ. P. 23 by a preponderance of the evidence. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 485 (3d Cir. 2015). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). The plaintiff must satisfy "the prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of the class representative." *Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015). Additionally, the "proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 345 (2011).

Plaintiff has sought certification under Rules 23(b)(1) and 23(b)(2). "Most ERISA class action cases are certified under Rule 23(b)(1)." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008). This rule "allows for certification when the prosecution of separate suits by individual class members would create a risk of inconsistent or varying adjudications and establish incompatible standards for Defendants, or when a judgment in one suit would be dispositive of the interests of the other class members who were not parties to the suit." *Id.* at 107. Rule 23(b)(2) authorizes a class action if the defendant "has acted or refused to act on

2

grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011).

Courts have recognized "that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013). To satisfy this implicit "ascertainability" requirement, a plaintiff must show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017) (cleaned up).

Defendant challenges certification on only three grounds: (1) ascertainability; (2) numerosity; and (3) adequacy of the representation. (D.I. 93 at 1).

## III. DISCUSSION

### A. Ascertainability

Plaintiff seeks to represent a class of "all persons who were participants in the Plan and the beneficiaries of such participants." (D.I. 30 ¶ 46). Defendant agues this proposed definition is too ambiguous to meet the "ascertainability" requirement. (D.I. 93 at 6). This requirement, however, applies to Rule 23(b)(3), *see Carrera*, 727 F.3d at 305, while Plaintiff is only seeking certification under Rules 23(b)(1) and 23(b)(2). The Third Circuit has held that classes certified under Rule 23(b)(2) do not need to be ascertainable. *Shelton*, 775 F.3d at 561. Even if the requirement applies to Rule 23(b)(1), certification is appropriate here because the proposed class is ascertainable.

3

Defendant attacks two alleged ambiguities in the proposed class. First, Defendant argues it is unclear whether this class includes employees who were hired and terminated after the transactions occurred. (D.I. 93 at 5.) Second, Defendant argues the class lacks a clear end date. (*Id.*). These ambiguities, according to Defendant, "are a fatal flaw and prevent certification." (*Id.*)

"Participant" is a term of art under ERISA that can include former employees. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 n.6 (2008) ("A plan 'participant,' as defined by § 3(7) of ERISA, 29 U.S.C. § 1002(7), may include a former employee with a colorable claim for benefits."); *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) (holding that, under ERISA, "participant" is a "distinct term[] of art" that "refers to an employee or former employee who takes part in his employer's plan."). It is clear therefore that the proposed class includes former employees, including those who were hired after the transactions at issue. To fall within the class, the employees just need to have held stock in the Plan after the first challenged transaction occurred on October 2, 2012. These are the employees who would have a claim that the transactions diminished the value of their retirement accounts.

Plaintiff is not proposing an ever-expanding class, with good reason. "[A]n open-ended end-date is untenable." *Hart v. Rick's NY Cabaret Int'l, Inc.*, 2013 WL 11272536, at *5 (S.D.N.Y. Nov. 18, 2013). "The proposed class may not be amorphous, vague, or indeterminate and it must be administratively feasible to determine whether a given individual is a member of the class." *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 233 (W.D. Pa. 2001) (cleaned up). Instead, Plaintiff suggests it is within my discretion to set the end date of the class as the date of judgment. (D.I. 109 at 5). Courts have alternatively defined the end date for a class as the date the complaint was filed, *Jacks v. DirectSat USA, LLC*, 2012 WL 2374444, at *8 (N.D. Ill. June

4

19, 2012), and the date of class certification, *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 n.2 (S.D.N.Y.2001). A class is ascertainable if its members are identifiable "at the moment of certification." *Shelton*, 775 F.3d at 559. To meet the ascertainability requirement, and in the interest of fairness and efficiency, I therefore set the end date of the class as the date of this decision.

With these parameters set, the class is ascertainable. It is "defined with reference to objective criteria" because no subjective assessment is required to determine whether an employee was a participant in the ESOP within the relevant time period. *City Select Auto Sales*, 867 F.3d at 439. Reviewing the necessary participant records is a "reliable and administratively feasible mechanism" for determining whether someone is a member of the class. *Id.*

### B. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The Third Circuit has held this requirement is generally met "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). According to a 2017 regulatory filing, the Plan had more than 2,300 participants. (D.I.82, Ex. 4, "Form 5500," at 2). Defendant concedes there were 2,346 participants in the Plan in 2012 and 1,828 participants in 2013. (D.I. 128). The class therefore meets the numerosity requirement.

### C. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This means that the "claims must depend upon a common contention" and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 131. The class claims here all depend on the question of

5

whether the ESOP paid an inflated price for the MRMC stock in the two transactions. There are therefore questions common to the class within the meaning of 23(a)(2).

### D. Typicality

Under Rule 23(a)(3), class certification is appropriate only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "does not require that all class members share identical claims," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004), but the proposed representative must be "sufficiently *similar* to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009).

Here, Plaintiff Choate was a participant in the ESOP when the challenged transactions took place. (Choate Decl. at 1). His claim, like those of the other class members, is that the transactions illegally diminished the value of his retirement account. He would not face "significant unique or atypical defenses" to his claim because Choate and the rest of the class all challenge the same conduct. *In re Schering*, 589 F.3d at 598; *see also Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.") While Choate's claim may be smaller than that of other class members (and larger than others), the difference is not enough to make his claim atypical of the class. He therefore meets the requirement of Rule 23(a)(3).

### E. Adequacy of Representation

To satisfy Rule 23(a)(4), "the representative parties [must] fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "This inquiry is vital, as class members with divergent or conflicting interests from the named plaintiffs and class counsel cannot be adequately represented." *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 132 (3d Cir. 2012) (cleaned up).

Defendant argues Choate is an inadequate representative because his account was only 20 percent vested when he left the company in April 2013. (D.I. 93 at 11) As a result, he forfeited about $28,000 in benefits. At his deposition, Choate acknowledged that other class members have "more skin in the game." (D.I. 94, Ex. 1, "Choate Dep. Tr.," at 101).

The fact that other class members may have suffered more harm than Choate did is not a conflict of interest that would render him an inadequate representative. Differences in the "extent of the injury that certain class members incurred . . . does not clearly suggest that the class members had antagonistic interests." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009). Even though some class members have "more skin in the game" than Choate, that does not mean Choate has "divergent or conflicting interests" from those members. *Larson*, 687 F.3d at 132. While Choate had left the company before the 2013 transaction, he was still a participant in the ESOP when the transaction occurred, so it did affect his interests. (*See* D.I. 98, Ex. 3). I therefore find that Choate will "fairly and adequately protect the interests of the class."

Defendant questions whether it is necessary for two law firms to represent the class. (D.I. 93 at 14). Given the complexity of ERISA litigation (and the fact Defendant is also represented by two law firms), the attention of two firms is appropriate. Plaintiff has invoked ERISA's fee-shifting provision, 29 U.S.C. § 1132(g), so it seems unlikely that any attorney's fees would harm

7

the class's interest, and, in any case, those fees must be "reasonable." Fed. R. Civ. P. 23(g). Based on the experience of counsel at Bailey & Glasser, LLP and Feinberg, Jackson, Worthman & Wasow, LLP, I find Plaintiff's counsel will fairly and adequately represent the interests of the class.

### F. Rule 23(b)(1)

In addition to the requirements of Rule 23(a), Plaintiff must satisfy one of the provisions of Rule 23(b). A class can be maintained under Rule 23(b)(1) if:

> "(1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."

Fed R. Civ. P. 23(b)(1). If Plaintiff can show Defendant caused the ESOP to overpay for MRMC stock, that determination "would be dispositive of the interests of the other members" of the class because Plaintiff is seeking an order requiring Wilmington Trust to reimburse the Plan directly. (D.I. 1 at 15). "Not surprisingly . . . because of the unique and representative nature of an ERISA § 502(a)(2) suit, numerous courts have held class certification proper pursuant to Rule 23(b)(1)(B)." *Stanford v. Foamex L.P.,* 263 F.R.D.

8

156, 174 (E.D. Pa. 2009); *see also In re Ikon Office Sols., Inc.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000) ("[G]iven the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief."). Defendant has not challenged the appropriateness of certification under this provision. I therefore find Plaintiff has met his burden under Rule 23(b)(1)(B).

### G. Rule 23(b)(2)

Because certification is proper under Rule 23(b)(1)(B), it is unnecessary for me to decide whether the class could also be maintained under Rule 23(b)(2). *See In re AOL Time Warner ERISA Litig.*, 2006 WL 2789862, at *3 (S.D.N.Y. Sept. 27, 2006) ("[T]he Court's determination that the Class is properly maintained under Rule 23(b)(1)(B) makes any further holding unnecessary.").

### IV. CONCLUSION

For these reasons, I will grant Plaintiff's Motion for Class Certification. An Order consistent with this Opinion will be entered.