## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RODNEY CHOATE, on behalf of the
MRMC ESOP, and on behalf of a class of all
other persons similarly situated,

          Plaintiff,

v.

WILMINGTON TRUST, N.A., as successor
to Wilmington Trust Retirement and
Institutional Services Company,

          Defendant.

Cons. Case No. 17-250-RGA

## PLAINTIFF'S BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

David A. Felice (#4090)
Bailey & Glasser, LLP
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, DE 19808
Telephone: (302) 504-6333
dfelice@baileyglasser.com

Gregory Y. Porter
Ryan T. Jenny
Patrick O. Muench
Bailey & Glasser, LLP
1055 Thomas Jefferson St., NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
gporter@baileyglasser.com
rjenny@baileyglasser.com
pmuench@baileyglasser.com

Dated: August 17, 2020

Daniel Feinberg (*pro hac vice*)
Todd Jackson (*pro hac vice*)
FEINBERG, JACKSON, WORTHMAN &
WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
dan@feinbergjackson.com
todd@feinbergjackson.com

*Attorneys for Plaintiff and the Class*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

    A.      Background ................................................................................................ 2

    B.      Discovery .................................................................................................. 2

    C.      Motion Practice ........................................................................................ 3

    D.      The Parties' Settlement Efforts ............................................................... 3

III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS ............................ 4

    A.      Benefits to the Class ................................................................................. 4

    B.      Notice and Administration ....................................................................... 4

    C.      Service Award to the Class Representative and Attorneys' Fees and Costs .......... 6

    D.      Release of Claims ..................................................................................... 6

IV.     ARGUMENT ....................................................................................................... 6

    A.      The Settlement is Fair, Reasonable, and Adequate and Should Be Approved ....... 6

        1.      The class is adequately represented. ........................................... 8

        2.      The Proposed Settlement was Negotiated at Arm's Length. ..................... 9

        3.      The complexity, expense, and likely duration of the litigation. .............. 10

        4.      The stage of the proceedings and the amount of discovery completed. ... 11

        5.      The risks of establishing liability, damages and maintaining the class action through trial. ............................................................ 12

        6.      The ability of the Defendant to withstand a greater judgment ................. 13

        7.      The range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. ........................... 13

        8.      The effectiveness of the proposed method of distributing relief to the Class. ................................................................................ 18

        9.      The terms of the proposed award of attorneys' fees. ................................ 19

        10.     The proposal treats class members equitably relative to each other. ........ 19

        11.     The Proposed Settlement also satisfies the Prudential factors. ................. 19

V.      CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brundle v. Wilmington Trust, N.A.*,
    241 F. Supp. 3d 610 (E.D. Va. 2017) ...........................................................................17, 18

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...........................................................................................10, 12

*Chao v. Hall Holding Co, Inc.*,
    285 F.3d 415 (6th Cir. 2002) ...............................................................................................14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)................................................................................................8, 12

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975).......................................................................................... *passim*

*Halley v. Honeywell Int'l, Inc.*,
    861 F.3d 481 (3d Cir. 2017)...................................................................................................6

*Hochstadt v. Bos. Sci. Corp.*,
    708 F. Supp. 2d 95 (D. Mass. 2010) ....................................................................................15

*Huffman v. Prudential Ins. Co. of Am.*,
    2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ...............................................................8, 19, 20

*Krueger v. Ameriprise Fin., Inc.*,
    2015 WL 4246879 (D. Minn. July 13, 2015) ......................................................................17

*McDonough v. Toys R Us, Inc.*,
    80 F. Supp. 3d 626 (E.D. Pa. 2015) .....................................................................................15

*Mehling v. New York Life Ins. Co.*,
    248 F.R.D. 455 (E.D. Pa. 2008).............................................................................................15

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
    2012 WL 13186948 (D.N.J. Oct. 1, 2012).............................................................................17

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
    No. 08-CV-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) .....................................................16

*Neil v. Zell*,
    767 F. Supp. 2d 933 (N.D. Ill., 2011) ..................................................................................14

*Newbridge Networks Sec. Litig.*,
   1998 WL 765724 (D.D.C. Oct. 23, 1998) ...........................................................14

*Perez v. Bruister*,
   823 F.3d 250 (5th Cir. 2016) ...............................................................................14

*Perez v. First Bankers Trust Servs., Inc.*,
   2017 WL 1232527 (D.N.J. Mar. 31, 2017)..........................................................14

*In re Pet Food*,
   629 F.3d at 350 ....................................................................................................19

*Pfeifer v. Wawa, Inc.*,
   2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ......................................................15

*In re Processed Egg Prod. Antitrust Litig.*,
   2016 WL 3584632 (E.D. Pa. June 30, 2016) .......................................................13

*In re Prudential Ins. Co of Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998).......................................................................... *passim*

*Reibstein v. Rite Aid Corp.*,
   761 F. Supp. 2d 241 (E.D. Pa. 2011) ...................................................................13

*Reich v. Valley Nat. Bank of Arizona*,
   837 F. Supp. 1259 (S.D.N.Y. 1993).....................................................................14

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) (noting that since 1995, class action
   settlements have typically "recovered between 5.5% and 6.2% of the class
   members' estimated losses")................................................................................14

*Stevens v. SEI Invs. Co.*,
   2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ...................................................10, 20

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011)..................................................................................13

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002) ...........................................................................8, 9

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)..................................................................................12

**Statutes**

29 U.S.C. § 1000, *et seq.*...........................................................................................1, 2

29 U.S.C. § 1106.........................................................................................................2

ERISA .................................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. ....................................................................................... 6-10, 12, 13, 18, 19

Plaintiff Rodney Choate, Individually and as Class Representative, hereby moves for an order approving a class action settlement agreement between Plaintiff and Defendant Wilmington Trust, N.A. ("Wilmington Trust").[1]

## I.     INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1000, *et seq.,* ("ERISA") class action for a payment of $19,500,000.00 into a common fund for the benefit of Class members. Should the Court grant final approval, every eligible Class Member will receive their portion of the Net Proceeds, according to a plan of allocation. The proposed Settlement Agreement satisfies all of the criteria for final approval and provides an excellent result for the Class. For these reasons, discussed in more detail below, Plaintiff requests that the Court grant this motion.

The Court granted Plaintiff's motion for preliminary approval and approved class notice on April 17, 2020. (D.I. 146.) The Parties have fulfilled their obligations under that Order, and Plaintiff now asks the Court to: (1) grant final approval of the Settlement Agreement; (2) find that the Class Notice satisfies the requirements of due process and Rule 23(e)(1); (3) find the Settlement Agreement to be fair, reasonable, and adequate; (4) dismiss on the merits and with prejudice all claims asserted against Wilmington Trust; (5) retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement; (6) award Plaintiff's counsel attorneys' fees and expenses in the amount of $6,000,000 as requested in their separately filed application for attorneys' fees; and (7) award $20,000 to Named Plaintiff Rodney Choate as a Service Award.

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Settlement Agreement. D.I. 145-1.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background

This is a class action brought on behalf of participants and beneficiaries of the MRMC Employee Stock Ownership Plan ("Plan" or "MRMC ESOP"). The Second Amended Complaint alleges that Defendant Wilmington Trust, in its capacity as Trustee, violated ERISA in connection with the purchase of shares of Martin Resources Management Corporation ("MRMC") common stock by the Plan in 2012 and 2013 (the "ESOP Transactions"). (D.I. 30.)

Capt. Rodney Choate alleges that Wilmington Trust violated ERISA § 406, 29 U.S.C. § 1106, because it engaged in a prohibited transaction under ERISA by, *inter alia*, approving a purchase price for MRMC stock that exceeded its fair market value and allowing parties in interest to sell their interests in MRMC at more than fair market value. (*Id*.)

Wilmington Trust denies these allegations; denies any wrongdoing or liability; and has vigorously defended itself in this action. Wilmington Trust does not admit wrongdoing of any kind regarding the ESOP Transactions or this action.

### B.    Discovery

The Parties vigorously prosecuted this action and completed discovery. They propounded and responded to written discovery. Declaration of Gregory Y. Porter filed herewith as Exhibit B ("Porter Decl."), ¶ 15. Plaintiff's counsel received and reviewed over 30,000 documents produced by Wilmington Trust, MRMC and various non-parties. *Id*. The Parties also took 15 fact depositions, including witnesses who were involved in the ESOP Transaction, prior litigation between Martin family members, and five expert witnesses. *Id*. Plaintiff's counsel retained and consulted with two experts who prepared expert reports and rebuttal reports regarding valuation and due diligence. *Id*. at ¶ 25. Wilmington Trust's counsel retained and consulted with three testifying experts who prepared reports on similar topics. *Id*. All testifying experts were deposed

before the Parties agreed to a settlement in principle. *Id*. at ¶ 15.  The Parties agreed to settlement

terms when the matter was ready for trial.

### C.    Motion Practice

Plaintiff Choate filed a motion for class certification, (D.I. 80), which Wilmington Trust

opposed (D.I. 93). The Court granted Plaintiff's motion for class certification. (D.I. 134.) The

Class is defined as "All persons who were participants in the Martin Resource Management

Corporation Employee Stock Ownership Plan (ESOP) between October 2, 2012 and the date of

this Order [December 10, 2019] and/or beneficiaries of such ESOP participants. Excluded from

the Class are Ruben S. Martin III, Scott D. Martin, and their family, legal representatives,

successors, heirs, and assigns." (D.I. 135.)

Both Parties filed motions for summary judgment. (D.I. 99, 103.) The motions were

pending at the time a settlement was reached. Trial was set for December 9, 2019, but then

continued to June 1, 2020. (D.I. 130, 136.) As discussed below, the Parties reached agreement on

settlement terms after the original trial date was continued.

### D.    The Parties' Settlement Efforts

In 2017 and in 2018, the Parties, through their counsel, participated in arm's length and

good faith settlement discussions and, in 2019, sought the assistance of Mediator Robert A. Meyer,

Esq. of JAMS. Porter Decl., ¶ 16. The Parties drafted and submitted comprehensive mediation

statements to Mr. Meyer that focused all sides on the key issues. *Id*. The Parties vigorously

engaged in the mediation process, during which all counsel made presentations to Mr. Meyer and

all attendees. *Id*. Although the Parties did not resolve the dispute during the in-person mediation,

Mr. Meyer continued to mediate the lawsuit, ultimately making a mediator's proposal that the

Parties accepted in January 2020. *Id*. The process of documenting the Settlement Agreement

continued in the weeks following agreement to the mediator's proposal. *Id*. The Parties ultimately

executed the Settlement Agreement currently before the Court on April 15, 2020. *Id.*

### III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement (D.I. 145-1) are summarized below.

#### A.    Benefits to the Class.

Wilmington Trust has agreed to pay $19.5 million ("Settlement Amount") into the Settlement Fund. Settlement Agmt., ¶ 7. The amount remaining after deduction from the Settlement Amount for (i) taxes (or reserves to pay taxes), (ii) settlement administration fees, including fees for independent fiduciary and independent valuation, (iii) Court-approved attorneys' fees and expenses, and (iv) any Service Awards to the Class Representative, shall constitute the "Net Proceeds." The Net Proceeds will be distributed to the Class Members pursuant to the Plan of Allocation, under which the Net Proceeds will be allocated to each Class Member in proportion to the vested company shares that he or she held in the MRMC ESOP, relative to the total number of such shares held by all Class Members. *Id.*, ¶ 8.2.2.2. The allocable portion of the Net Proceeds of those Class Members without an existing account in the MRMC ESOP shall be distributed by check to those Class Members directly by the Settlement Administrator, unless the Class Member elects to rollover such amount into an eligible retirement account. *Id.* The allocable portion of the Net Proceeds of those Class Members with an existing account in the MRMC ESOP shall be contributed to their ESOP account and thereafter invested in either MRMC stock or in a money market fund based on the election of each such Class Member. *Id.*

#### B.    Notice and Administration.

The Notice Plan approved by the Court was implemented by the Parties. In accordance with the terms of the Settlement Agreement, the Settlement Administrator, Angeion Group ("Angeion"), mailed the Class Notice to Class Members in accordance with the schedule contained in Plaintiff's Motion for Preliminary Approval (D.I. 144) and the Order Approving Class Notice

(D.I. 146). On June 29, 2020, Angeion mailed the Class Notice to 3,199 Class Members. *See* Declaration of Danielle Bracy of Angeion ("Bracy Decl.") ¶¶ 4-5, attached hereto as Exhibit C. As of August 10, 2020, 144 Class Notices were returned as undeliverable and 52 of those returned were mailed to new addresses. *Id.* at ¶ 7. Mailed Notice thus reached 3,107 Class Members. The Class Notice, attached to the Bracy Declaration as Ex. A and B, is clear and straightforward, providing Class Members with enough information to inform them about the nature of the action, the terms of the Settlement Agreement, and the procedures for entering an appearance to be heard or to object to the Settlement.

Angeion also established a settlement website with detailed information about the Settlement. Bracy Decl. ¶¶ 8, 10. The website address, www.mrmcesopsettlement.com, was printed on all Notices. *Id.* The website provides links to key documents, lists important dates and deadlines and explains Class Members' rights and options. *Id.* The website also provided e-mail addresses and physical addresses if Class Members had additional questions. Plaintiff's Motion for Award of Attorneys' Fees and Service Award and this motion will be posted on the settlement website once filed. Angeion will also process any objections by Class Members. *Id.* at ¶ 8. As of August 10, 2020, no objections have been received. *Id.* at ¶ 14.

If this Court approves the Settlement, the Settlement Administrator shall also implement the Plan of Allocation, as detailed in Section 8.2.2.2 if the Settlement Agreement, and make payments to former participants in the Plan and provide the current trustee of the Plan with a spreadsheet reflecting each current participant's distribution from the Net Proceeds and whether the participant is electing to invest in MRMC stock or in a money market fund.

The Settlement Administrator's fees and expenses are expected to be approximately $38,000.

The Settlement Administrator is also serving as Escrow Agent, and has established and is maintaining a qualified settlement trust to hold the Settlement Amount and Net Proceeds. Bracy Decl. ¶ 15.

**C.     Service Award to the Class Representative and Attorneys' Fees and Costs**

The Settlement Agreement provides that Class Counsel intends to request that this Court award attorneys' fees and litigation expenses not to exceed $6 million to be paid from the Settlement Amount. Settlement Agmt., ¶¶ 8.1, 8.2, 9.1. The Settlement Agreement also provides that Plaintiff shall petition the Court for a Service Award not to exceed $20,000 for the Class Representative in recognition of his service to the Class. *Id.*, ¶ 8.2.2.1.

Contemporaneously with this motion, Plaintiff filed his motion for approval of an award of attorneys' fees of $4,800,000; litigation expenses of $1,200,000; and a Service Award of $20,000 for the Class Representative.

**D.     Release of Claims**

In exchange for payment of the Settlement Amount by Wilmington Trust and satisfaction of the conditions required by the Settlement Agreement, Plaintiff and the Class will release any claims which were or could have been asserted in this action that in any way relate to the MRMC ESOP's investment in the stock of MRMC, including but not limited to claims related to the MRMC ESOP's acquisition of MRMC stock or the sale of stock by any MRMC shareholder.  The Releasees, Released Claims and the covenant not to sue are set forth in full in the Settlement Agreement. Settlement Agmt., ¶¶ 3.1, 3.2, 4.1.

**IV.     ARGUMENT**

**A.     The Settlement is Fair, Reasonable, and Adequate and Should Be Approved.**

Rule 23(e) provides that a class action cannot be settled without court approval. To be approved, a class action settlement must be fair, adequate, and reasonable. Rule 23(e)(2); *Halley*

*v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017). The 2018 Amendments to Rule 23

provide direction to courts considering whether to approve such a settlement. Rule 23(e)(2)

provides that the court should consider whether:

> (A) the class representatives and counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment;[2] and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Third Circuit has traditionally evaluated class action settlements under the nine factors

outlined in *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975): (1) the complexity, expense, and

likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the

proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the

risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the

ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the

settlement fund in light of the best possible recovery; (9) the range of reasonableness of the

settlement fund to a possible recovery in light of all the attendant risks of litigation. The 2018

---

[2] Class Counsel address the reasonableness of their requested attorneys' fees, expenses and Class Representative service award in a separate filing.

Committee Notes to Rule 23 recognized that each circuit had developed its own list of factors, like the *Girsh* factors, to be considered in determining whether a proposed class action was fair and explained that the goal of the amendment is not to displace those factors, but rather to focus the parties on the "core concerns" that motivate the fairness determination. *See Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019). Plaintiff will address all of these factors to the extent they are applicable, many of which overlap.[3]

Finally, this analysis takes place with the understanding that courts favor class action settlements (*see In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)), and that class settlements are presumed fair "if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002).

### 1.    The class is adequately represented.

Rule 23(e)(2)(A), requiring adequate representation by Plaintiff and his counsel was addressed in Plaintiff's Brief in Support of Motion for Class Certification (D.I. 81 at 12-15), and in the concurrently-filed Memorandum in Support of Motion for Attorneys' Fees and Costs and Service Awards. In sum, both Plaintiff and Class Counsel have effectively and diligently served the Class. The Class was well-represented by the Named Plaintiff. He has loyally and competently represented the class for over three years of hard-fought litigation. If he had not pursued the case, there would be no settlement benefits at all for the Class. He has participated in the discovery process, including by providing written discovery responses, obtaining and producing documents

---

[3] Here, there is no agreement other than the Settlement Agreement that Rule 23(e)(3)(C)(iv) requires to be identified**.** As to *Girsh* factor two, the reaction of the class to the Settlement, there have been no objections filed yet, but the deadline to object is September 10, 2020. If any objections are received by then, Plaintiff will respond separately.

and sitting for deposition. He consulted with counsel regarding the settlement negotiations and was prepared to testify at trial. He has no interests that are antagonistic to or in conflict with the Class.

In addition, Class Counsel are well-qualified and have vigorously prosecuted this class action. They have engaged in substantial discovery, motions practice, and mediation efforts, and were prepared to go to trial. *See*, *supra*, at p.2-4. Class Counsel are active class action practitioners with extensive experience in ERISA litigation. Porter Decl. ¶¶ 8-13; Declaration of Daniel Feinberg filed herewith as Exhibit D ("Feinberg Decl."), ¶¶ 4-8.

### 2. The Proposed Settlement was Negotiated at Arm's Length.

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length. There is typically an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations between experienced, capable counsel after meaningful discovery. *See*, *e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. at 254.

Here, as detailed above, the Parties engaged in comprehensive written discovery and took 15 fact depositions. As a result, they were in an excellent position to fully understand the strengths and weaknesses of their case. Moreover, the Parties have had substantive settlement discussions over three years. The Parties met in Washington, D.C., in October 2017 to conduct an early discussion of settlement which included a presentation by MRMC management. Porter Decl. ¶ 16. In the first quarter of 2018, the parties exchanged blind expert reports, after which the mediation efforts were suspended as the Parties were too far apart in their settlement positions. *Id*. After completing all discovery and briefing summary judgment and class certification, the Parties scheduled a mediation with an experienced mediator in September 2019. *Id.*. The Parties did not agree to settlement terms at that time, but the Mediator continued

to have follow-up discussions with the Parties and presented a Mediator's Proposal to the Parties in January 2020, which both accepted. *Id*. Plaintiff's counsel had a thorough understanding of Defendant's arguments and defenses, and both sides engaged in hard bargaining during settlement negotiations. The Settlement is the result of good faith, arm's-length negotiations by well-informed and experienced counsel.

The "arm's length negotiation" factor of Rule 23(e)(2)(B) is met.

**3.      The complexity, expense, and likely duration of the litigation.**

The first *Girsh* factor, and Rule 23(e)(2)(C)(i), address the complexity, cost, and likely duration of the litigation, taking into account the "probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (quotation marks omitted).

It is well-recognized that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *3 (E.D. Pa. Feb. 28, 2020) (*citing Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010)). This ERISA action is no different. The Parties have vastly different views about Wilmington Trust's actions, its potential liability and the likely outcome of the litigation. Plaintiff's core allegations regarding the MRMC stock purchases rested on facts that were strongly contested by Wilmington Trust, including the accuracy of MRMC's projections, whether the valuation methods employed by Wilmington Trust's advisors were proper, and whether there were negative facts that were ignored by or not sufficiently investigated by Wilmington Trust during the due diligence and negotiation process.

Wilmington Trust vigorously denied all of the allegations, asserted affirmative defenses and otherwise defended its actions with respect to the purchases. Wilmington Trust pointed to evidence which, in its view, supported the conclusion that it has no liability. Wilmington Trust also retained experts who supported such conclusions. If the action were to proceed through trial, Plaintiff would have to overcome these and other defenses and arguments.

Plaintiff and Wilmington Trust also strongly disagree on the proper measure of damages. Wilmington Trust contends that the Plan and its participants were not harmed at all. Plaintiff, on the other hand, argued that the Plan incurred significant financial damage through its overpayment for MRMC shares. The Parties have exchanged reports supporting their differing views of what the proper measure of damages should be and presented their theories extensively in the mediation. That core dispute had not been resolved at the time the Parties reached their Settlement and the uncertainty put both Parties at great risk.

These fact-intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day. Litigation would be even more lengthy and expensive if this action were to proceed. Trial was set for June 1, 2020, and would have required several attorneys from both Parties spending most of their time for a month preparing for a trial that was expected to last one week. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolution and causing more expense.

### 4. The stage of the proceedings and the amount of discovery completed.

This *Girsh* factor requires the Court to evaluate whether Plaintiff had an "adequate appreciation of the merits of the case before negotiating" settlement. *In re Prudential Ins. Co of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) (internal quotation marks

omitted).

This case was filed at the beginning of 2017. Before the Settlement was reached, the Parties completed discovery, briefed Plaintiff's motion for class certification, motions for summary judgment, filed and received rulings on motions *in limine* (D.I. 130), submitted a pretrial statement (including witness and exhibit lists) (D.I. 126), and had begun preparing for trial. The Parties therefore have had a complete opportunity to test their claims and defenses and fully understood the strengths and weaknesses of their positions, before they reached a settlement.

**5.    The risks of establishing liability, damages and maintaining the class action through trial.**

The fourth, fifth, and sixth *Girsh* factors, and Rule 23(e)(2)(C)(i), take into account the risks of establishing liability, establishing damages, and maintaining certification throughout the trial. These factors "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *Prudential*, 148 F.3d at 319. As to the risks of establishing liability, this factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995). As to damages, this factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant Corp.*, 264 F.3d at 238–39 (*quoting Gen. Motors*, 55 F.3d at 816). Finally, this factor (concerning the risks of maintaining the class action through trial) measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks and citations omitted).

Here the Plaintiff faced significant risks. As discussed above, Plaintiff and Wilmington Trust had vastly different views about the likely outcome of the litigation and the proper measure

of damages—issues that had not been resolved before trial and therefore placed the ultimate outcome of the litigation in doubt.

###### 6.    The ability of the Defendant to withstand a greater judgment.

The seventh *Girsh* factor weighs the ability of the defendant to withstand a greater judgment. This factor is "relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement," *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011). That is not the case here. Although Wilmington Trust's financial circumstances are not a limiting factor, the balance of other factors still support approval of this settlement. *See In re Processed Egg Prod. Antitrust Litig.*, 2016 WL 3584632, at *16 (E.D. Pa. June 30, 2016) ("Even if the Court were to presume that the defendants' resources far exceeded the settlement amount, in light of the balance of the other factors considered which indicate the fairness, reasonableness, and adequacy of the settlement, the ability of the defendants to pay more, does not weigh against approval of the settlement.").

###### 7.    The range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation.

The eighth and ninth *Girsh* factors, and Rule 23(e)(2)(C)(i), assess the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation. These factors assess "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, . . . compared with the amount of the proposed settlement." *Prudential*, 148 F.3d at 322.

As courts in this Circuit have noted, "in conducting the analysis, the court must guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011). Indeed, even

recoveries representing a very small percentage of the defendant's maximum exposure, which this is not, may be found to be fair, adequate and reasonable. *See, e.g.*, *Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Considering the costs, risks and delay of trial and appeal, the immediate and certain recovery of $19.5 million outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take—including trial, post-trial and post-judgment briefing, and appeals—for any judgment to be reduced to actual payment to Plan participants.

In cases, such as this one, alleging that the trustee violated ERISA by causing an employee stock ownership plan to pay too much for the stock of a privately-held company, Plaintiff contends that the measure of loss is the difference between what the plan paid for the stock and what the stock was worth at the time of the transaction. *See Perez v. Bruister*, 823 F.3d 250, 270-72 (5th Cir. 2016); *Chao v. Hall Holding Co, Inc.*, 285 F.3d 415, 423, 444 (6th Cir. 2002); *Perez v. First Bankers Trust Servs., Inc.*, 2017 WL 1232527, at *81 (D.N.J. Mar. 31, 2017); *Neil v. Zell*, 767 F. Supp. 2d 933, 944-45 (N.D. Ill., 2011); *Reich v. Valley Nat. Bank of Arizona*, 837 F. Supp. 1259, 1289 (S.D.N.Y. 1993).

Applying that theory, Plaintiff's valuation expert opined that the Plan paid approximately $106 million in excess of fair market value between the 2012 and 2013 transactions. However, the Plan also received a payment of preferred dividends in the 2013 transaction that was significantly in excess of what the Plan would have received if it had paid fair market value in the 2012 transaction. According to Plaintiff's expert, the excess preferred dividend payment of approximately $24 million should be offset from the Plan's excess payment for MRMC stock in

14

the 2012 and 2013 transactions, leaving maximum net damages of approximately $82 million. Plaintiff's expert reached those opinions by making corrections to what he saw as errors in the report provided by Defendant's financial advisor in the transactions at issue. Plaintiff's expert disagreed with Defendant's advisor on the failure to account for MRMC's recapitalization in the 2012 transaction; the application of a control premium; the selection of appropriate guideline companies; and identified and corrected fundamental valuation errors.

Defendant retained its own expert who testified in support of the valuation conclusions reached by Defendant's financial advisor in the transactions at issue. Ultimately, this disagreement would have resulted in a battle of experts on valuation and damages issues, of which the outcome is uncertain. Certain recovery of $19.5 million – approximately 24% of the best possible potential recovery – represents a good result for the Class.

This case falls within the same range of reasonableness that other courts found in the limited number of cases Plaintiff has been able to find where there was a specific comparison of settlement value with the "best possible recovery." In the instant case, the Class Members will receive approximately 24% of the "best possible recovery." In *Pfeifer v. Wawa, Inc.*, 2018 WL 4203880, at *9 (E.D. Pa. Aug. 31, 2018), an ESOP case, the court concluded that a settlement representing between 25% (under one damages theory) and 50% (under the other damages theory) fell within the permissible range. In *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 646 (E.D. Pa. 2015), cited by *Pfeifer,* the court concluded that a settlement that represented approximately 24% of estimated actual damages was reasonable and it had "upheld far smaller settlements." Likewise, in *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 108–09 (D. Mass. 2010), the parties settled for $8.2 million in a case that was estimated at the high end by the plaintiffs' counsel to be $160 million and more conservatively by the court to be $30 million. And in *Mehling v. New York*

15

*Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008), the court found that a settlement of 20% of the "best possible" recovery was comparable to other class settlements approved in that district. *See also In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. 08-CV-285, 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010) (approving settlement of $41.5 million where the damages would have been "substantial in light of the billions of dollars grossed from global sales").

Comparison to other ERISA class settlements also demonstrates the reasonableness of the amount obtained. Plaintiff had Class Notices mailed to 3,199 Class Members. Thus, each Class Member will receive approximately $6,100 before fees, costs and other settlement expenses are deducted, which is greater than recoveries in other ERISA cases:

| Case | Recovery | Class Member Avg. Gross Recovery |
|------|----------|-----------------------------------|
| *Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-cv-9329 (S.D.N.Y.) | $6,900,000 | $27.34 |
| *Figas v. Wells Fargo*, No. 08-cv-4546 (D. Minn.) | $17,500,000 | $75.99 |
| *Will v. General Dynamics Corp.*, No. 06-cv-698 (S.D. Ill.) | $15,150,000 | $96.62 |
| *Bilewicz v. FMR Co.*, Nos. 13-cv-10636 and 14-cv-10035 (D. Mass.) | $12,000,000 | $129.73 |
| *Dennard v. Transamerica Corp.*, No. 15-cv-30 (N.D. Iowa) | $3,800,000 | $148.55 |
| *Nolte v. Cigna Corp.*, No. 07-cv-2046 (C.D. Ill.) | $35,000,000 | $172.87 |
| *Richards-Donald v. Teachers Ins. and Annuity Ass'n of Am.*, No. 15-cv-8040 (S.D.N.Y.) | $5,000,000 | $189.09 |
| *Main v. American Airlines, Inc.*, No. 16-cv-473 (N.D. Tex.) | $22,000,000 | $212.65 |
| *Sims v. BB&T Corp.*, No. 15-cv-732 (M.D.N.C.) | $24,000,000 | $330.43 |
| *Moreno v. Deutsche Bank Am. Holding Corp.*, No. 15-cv-9936 (S.D.N.Y.) | $14,000,000 | $388.02 |

| | | |
|---|---|---|
| *Pease v. Jackson Nat'l Life Ins. Co.*,<br>    No. 17-cv-284 (W.D. Mich.) | $4,500,000 | $392.88 |
| *Kanawi v. Bechtel Corp.*,<br>    No. 06-cv-5566 (N.D. Cal.) | $18,500,000 | $432.92 |
| *Krueger v. Ameriprise Fin.*,<br>    No. 11-cv-2781 (D. Minn.) | $27,500,000 | $591.91 |
| *Gordan v. Mass. Mutual Life Ins.*,<br>    No. 13-cv-30184 (D. Mass.) | $30,900,000 | $965.63 |
| *Schapker v. Waddell & Reed Fin. Inc.*,<br>    No. 17-cv-2365 (D. Kan.) | $4,875,000 | $1,064.41 |
| *Price v. Eaton Vance Corp.*,<br>    No. 18-cv-12098 (D. Mass.) | $3,450,000 | $1,326.92 |
| *Urakhchin v. Allianz Asset Mgmt. of Am., LP*,<br>    No. 15-cv-1614 (C.D. Cal.) | $12,000,000 | $2,065.40 |
| *Velazquez v. Massachusetts Fin. Servs. Co.*,<br>    No. 17-cv-11249 (D. Mass.) | $6,875,000 | $2,291.67 |

The analysis under the pertinent *Girsh* factors is highly context specific. "The last two *Girsh* factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2012 WL 13186948, at *4 (D.N.J. Oct. 1, 2012) (citation omitted). As in *Vytorin Erisa Litigation*, the "benefit conferred by the Settlement in this case" is "substantial" and "represents a better option than little or no recovery at all." *Id.* Given the potential defenses and uncertainty inherent in any battle of the experts, Plaintiff concluded that the Settlement represents a good value for the Class.

As a final point of comparison, consider Plaintiff's counsel's experience in a similar ERISA case involving an ESOP. In *Brundle v. Wilmington Trust, N.A.*, 241 F. Supp. 3d 610, 645 (E.D. Va. 2017), as here, the plaintiff's expert identified a number of errors committed by the trustee's financial advisor in an ESOP transaction and opined that the plan at issue overpaid by approximately $103 million. And as here, the defendant had a valuation expert who disputed that figure. After noting that "[a]s is typical in a battle of the experts, each was partly in the right, and all were in the wrong," the court concluded that the plan overpaid by approximately $30 million.

17

*Id.* at 645, 648 (punctuation, citation omitted). In that case, even after taking on the risks and expense of proceeding through trial, the plaintiff was able to recover less than 30% of the "best possible recovery." The proposed Settlement here removes the risk that the Class Members will receive nothing and instead provides them with approximately 24% of the "best possible recovery."

Given the affirmative defenses that Defendant raised and the attendant risk of recovering nothing for the Plan participants, Plaintiff believes the proposed Settlement terms are well within the range of reasonableness.

**8.    The effectiveness of the proposed method of distributing relief to the Class.**

Rule 23(e)(2)(C)(ii), examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. The proposed method for distributing relief to Class Members is effective and equitable. Here, Class Members do not need to submit a claim form. MRMC has provided the names and last known addresses of the Class members, and the number of shares of MRMC stock allocated to their ESOP account to the Settlement Administrator. Settlement Agmt., ¶ 2.1.3. The Settlement Administrator will use that information, and follow the Plan of Allocation. Those Class Members with an existing account balance in the MRMC ESOP will make an election to either have their settlement share invested in a money market fund account established for the Plan or receive additional shares of MRMC stock of equivalent value (based upon an independent valuation). *Id.*, ¶ 8.2.2.2. Those Class Members without an existing account balance in the MRMC ESOP will have the option of receiving a check directly from the Settlement Administrator or depositing their distribution via a "roll over" into an Individual Retirement Account or qualified retirement plan. This method of distributing relief is highly efficient and weighs in favor of granting final approval.

### 9.    The terms of the proposed award of attorneys' fees.

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. Contemporaneously with this motion, Plaintiff's Counsel filed their motion for approval of an award of attorneys' fees of $4,800,000 and litigation expenses of $1,200,000. That request is consistent with the Settlement Agreement's provisions that Class Counsel's petition for an award of attorneys' fees and litigation expenses would not exceed $6 million. Settlement Agmt., ¶ 9.1.

### 10.    The proposal treats class members equitably relative to each other.

Under Rule 23(e)(2)(D), the court must consider whether the proposal treats class members equitably relative to each other. As noted above, distributions to the Class Members is based on the number of vested shares held in their MRMC ESOP Accounts. Therefore, individual Class Members will not receive preferential treatment but instead all will receive *pro rata* distributions based on the number of vested shares in their account and as detailed in the Plan of Allocation.

### 11.    The Proposed Settlement also satisfies the *Prudential* factors.

The Third Circuit has also identified additional nonexclusive factors for courts to consider in evaluating proposed settlements. *See In re Krell v. Prudential Ins. Co. of Am. (In re Prudential)*, 148 F.3d 283 (3d Cir. 1998). The *Prudential* factors[4] often overlap with the *Girsh* factors, and only the *Prudential* factors relevant to the litigation in question need be addressed. *See In re Pet Food*

---

[4] These are: (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants; (4) whether class or subclass members are accorded the right to opt-out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable. *In re Pet Food*, 629 F.3d at 350.

*Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010); *In re Prudential*, 148 F.3d at 323-24.

The few *Prudential* factors that are relevant to this action support granting final approval. As discussed above, the substantive issues were mature. The Parties had completed fulsome discovery, both fact and expert, and therefore had an adequate opportunity to develop their knowledge and arguments and properly evaluate the potential outcomes at trial. Moreover, although Class Members do not have the opportunity to opt out, they were provided with robust notice and the opportunity to file objections to the Settlement. *See Stevens*, 2020 WL 996418 at *6 (considering opportunity to file objections under this *Prudential* factor). Class Members will also be able to review the petition for attorneys' fees and expenses and have more than sufficient time to object to those requests. Finally, Class Members do not need to submit a claim form and the procedure for Class Members to choose their payment option, detailed in the Plan of Allocation, is fair and reasonable. In sum, all of the applicable *Prudential* factors further support approval granting final approval.

## V.     CONCLUSION

For all the foregoing reasons, the Settlement Agreement should be finally approved.

The Parties also request that, if the Standing Order in re: Court Operations Under the Exigent Circumstances Created by COVID-19 is amended such that it would impact the Final Fairness Hearing, that the Final Fairness Hearing be allowed to proceed telephonically on October 1, 2020, as currently scheduled.

Dated: August 17, 2020

/s/ David A. Felice
David A. Felice (#4090)
Bailey & Glasser, LLP
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, DE 19808
Telephone: (302) 504-6333
dfelice@baileyglasser.com

Gregory Y. Porter
Ryan T. Jenny
Patrick O. Muench
Bailey & Glasser, LLP
1055 Thomas Jefferson St., NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
gporter@baileyglasser.com
rjenny@baileyglasser.com
pmuench@baileyglasser.com

Daniel Feinberg (*pro hac vice*)
Todd Jackson (*pro hac vice*)
FEINBERG, JACKSON, WORTHMAN &
WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
dan@feinbergjackson.com
todd@feinbergjackson.com

*Attorneys for Plaintiff and the Class*